FOURTH DIVISION

                                                                                                            May 22, 2003

Nos. 1-01-3652, 1-01-3653, 1-01-3681 and 1-02-1779

(Consolidated)

In re
 ESTATE OF CHARLOTTE E. BARTH, 

a Disabled Person, Now Deceased

(Joseph A. Benjamin and Teen Living Programs, Inc.,

Appellants,

v.

Estate of Charlotte E. Barth; Lynn R. Ostfeld, as Guardian 
ad litem
 and Court-Appointed Attorney for Charlotte E. Barth; Roger Barth, Indiv. and as Guardian of the Estate and Person of Charlotte E. Barth; and Rona Roe, Indiv.; and LaSalle Bank, N.A., as Trustee of the Charlotte E. Barth Trust,

Appellees.

(The People, 
ex rel. 
James E. Ryan, Attorney General of Illinois,

Prospective Intervenor-Appellant)).

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Arthur C. Perivolidis 

and 

Honorable 

Robert Cusack,

Judges Presiding.

JUSTICE KARNEZIS delivered the opinion of the court:

In this consolidated appeal, Teen Living Programs, Inc. (TLP), Joseph Benjamin (Benjamin) and the Attorney General of Illinois (the Attorney General), filing on 
behalf of the People of the State of Illinois as ultimate beneficiaries of any bequest to TLP, a charitable organization, appeal from an order of the trial court denying TLP's and Benjamin's motions to vacate an "Agreed Pre-Trial Settlement Order"
 (agreed order) and the Attorney General's motion to intervene
 in the proceedings.  The agreed order was entered in guardianship proceedings involving Charlotte E. Barth (Charlotte) and the Charlotte E. Barth Trust (the trust).  The parties to the agreed order are Charlotte's g
uardian 
ad litem
 and court-appointed attorney
 Lynn Ostfeld (Ostfeld)
,
 
Charlotte's son Roger Barth (Roger), Charlotte's daughter Rona Roe (Rona), and LaSalle Bank
, the trustee of the Charlotte E. Barth Trust.  The order declared Charlotte incompetent, appointed a guardian for her estate, invalidated an amendment she made to the trust, and made distributions from the trust and from the proceeds of a liquidated annuity.  
In addition, Benjamin appeals from an order of the trial court 
 in Charlotte's decedent's estate
 dismissing, on 
res judicata
 grounds, his claim against Ostfeld challenging the validity of the agreed order
.

On appeal, appellants argue that the court erred in denying their motions to vacate and intervene because the agreed order was void for the following reasons: (1) it 
affected their rights as beneficiaries under the trust, and therefore, as interested and necessary parties, they were entitled to notice regarding the proceedings which they did not receive; (2) the court lacked subject matter jurisdiction to enter the agreed order 
because (a) the only pleadings before the court concerned appointment of a guardian, not a petition to take estate planning measures
 pursuant to the Probate Act of 1975 (755 ILCS 5/1-1 
et seq.
 (West 1998)) (Probate Act) and (b) Ostfeld had no statutory authority to agree to revoke the amendment; and (3) the order was procured by fraud.  
Benjamin also argues that, because the order denying his motion to vacate entered in the guardianship proceedings was still on appeal when the court dismissed his claim against the decedent's estate, that order was not final and 
res judicata
 did not apply.  
We reverse and remand both the court's order in the guardianship proceedings and the court's order in the decedent's estate proceedings.

Charlotte established the trust in 1992, providing for her care during her lifetime.  Upon her death, after certain bequests including a $25,000 bequest to Benjamin, the trust residual would go to Roger and Rona.  
In 1998, Roger and Rona filed a chancery suit against Charlotte and her then co-trustee Benjamin alleging mismanagement of the trust and breach of fiduciary duty.  The court appointed former Illinois Supreme Court Justice Seymour Simon as guardian 
ad litem
 for Charlotte to determine her condition.  

Justice Simon interviewed Charlotte three times in February 1999 and once in March 1999.  On March 10, 1999, Justice Simon filed a report stating that Charlotte was angry with Roger and Rona, she wished to have nothing to do with them
 because of their allegation in the chancery suit that she was not competent to make decisions, and she was fearful that Roger would assault her.  Justice Simon did not think that Charlotte needed a guardian of either her person or her estate.  However, b
ecause of Charlotte's memory lapses, he recommended that she receive help with her bill paying, an institutional co-trustee be appointed to the trust to serve with her, and an audit of her accounts be conducted.  Pursuant to an agreed order, the court dismissed the chancery suit without prejudice on November 22, 1999.
    

On July 15, 1999, Charlotte changed the beneficiary of a $400,000 annuity from Roger and Rona to Benjamin. 

On September 27, 1999, Charlotte executed amendment 3 to the trust, increasing Benjamin's bequest to $50,000 and substituting TLP as residuary beneficiary under trust, thereby eliminating Roger and Rona as beneficiaries.  

On March 20, 2000, LaSalle Bank, as trustee of the trust, filed a petition for appointment of a private social service agency as guardian of Charlotte's person, stating that Charlotte was a disabled person due to "dementia" and unable to make responsible decisions concerning her care.  On April 11, 2000, Rona filed a cross-petition requesting appointment of Roger as guardian of Charlotte's person
.

On April 7, 2000, Charlotte liquidated the annuity of which Benjamin was the beneficiary and on April 19, 2000, deposited the $389,000+ proceeds 
into a joint account she held with Roger.
 
  
   
 
  

In connection with the guardianship proceedings, Dr. Steven Fox, D.O., interviewed Charlotte on February 11, 2000, February 23, 2000, and April 24, 2000.  In his April 27, 2000, report, Dr. Fox found 90-year-old Charlotte "totally incapable of making financial, personal and medical care decisions," "highly susceptible to patronization, exploitation and undue influence," and likely to require "surrogate decision making for the remainder of her life."  

On April 20, 2000, the court appointed Ostfeld as guardian 
ad litem
 for Charlotte to determine her condition.  Ostfeld interviewed Charlotte on April 26, 2000, and filed a report on April 27, 2000, in which she recommended that the court appoint a plenary guardian for Charlotte's person and estate.  Ostfeld stated that her opinion of Charlotte's capabilities was in conformity with Dr. Fox's report.  Ostfeld reported that Charlotte expressed to Ostfeld that she would only accept Roger as guardian of her person, she wanted her money to go to her family and any decisions regarding her money should be made by family members who had worked for the money and deserved to have it. 

On April 27, 2000, both LaSalle Bank and Rona were allowed to amend their petitions to request appointment of a guardian of Charlotte's estate as well as her person.  In the same order, the court appointed Ostfeld as Charlotte's attorney and "her powers and duties [were] expanded accordingly." 

On June 5, 2000, Charlotte revoked amendment no. 3. 

On June 10, 2000, at Ostfeld's request, Dr. Fox examined Charlotte again to further evaluate her capacity.  He filed an addendum report reaffirming the need for a plenary guardian of her estate and person, "in particular the need for a guardian of the estate, due to the overwhelming evidence of patronization, exploitation and undue influence, which rise to the level of reportable elder abuse and professional misconduct." 

On September 21, 2000, the probate court transferred the case to calendar 14 for pretrial hearing or settlement.  That same day, by agreement of the parties, the court appointed Roger plenary guardian of Charlotte's person.  An October 10, 2000, joint pretrial statement filed by the parties makes clear that the only pleadings pending before the court were the petition and cross-petition for appointment of a plenary guardian of the estate.  However, the statement also raised issues regarding Charlotte's competence when she executed amendment no. 3, whether legal fees should be paid and whether certain distributions could be made from the trust.

On October 16, 2000, the court entered the agreed pretrial settlement order, thereby appointing Roger as plenary guardian of Charlotte's estate; finding Charlotte incompetent when she executed amendment 3; voiding amendment 3; ordering payment from the proceeds of the liquidated annuity of legal fees to Rona and Roger's attorneys and to Ostfeld; putting the remaining proceeds from the annuity into a trust for Roger's use in his capacity as guardian; providing for payment of a one-time gift of $675,000 to Roger and Rona and yearly $10,000 gifts to Roger, Rona and Rona's daughter; forgiving a $200,000 loan the trust made to Roger and providing that the loan be considered an advance against Roger's residuary share of the trust; and indemnifying LaSalle Bank, Roger and Rona from claims each may have against the other. 

Charlotte died on November 6, 2000.  On December 21, 2000, Roger, as guardian of Charlotte's estate, filed a petition to close the guardianship estate in lieu of filing an inventory and accounting.  

On January 11, 2001, TLP orally made a motion for leave to appear in the proceedings regarding the petition to close the guardianship estate.  The court granted TLP leave to appear as "legatee under the 3rd Trust Amendment of the decedent's amended and restated trust agreement," "no notice of the motion being given, but no objection thereto stated."   "[A]ll matters relating to the closing of the estate and the Agreed Pre-trial Settlement Order" were again transferred to another calender for pretrial and/or settlement.  On February 7, 2001, Benjamin sought leave to intervene. 

On March 6, 2001, TLP filed a motion pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 1998)) to vacate the October 16, 2000, agreed order asserting that: (1) TLP, as the residuary beneficiary under amendment 3, was entitled to prior notice of any action taken with regard to the trust; (2) the estate planning measures taken in the agreed order were done in violation of section 11a-18(a) of the Probate Act (755 ILCS 5/11a-18(a)
 (West 1998)); and (3) even if the proceedings were conducted in accordance with the requirements of the Probate Act, the court did not have subject matter jurisdiction to entertain the relief requested because no pleadings had been filed requesting the relief ultimately granted.  

Benjamin subsequently filed a motion for leave to adopt and incorporate TLP's motion to vacate or, in the alternative, to transfer the proceeds of the liquidated annuity to the estate.  In addition to TLP's arguments, Benjamin asserted that Roger and Rona committed fraud upon the court, concealed facts from the judge and exercised undue influence over Charlotte; that Ostfeld breached her fiduciary duty to Charlotte; and that the court lost jurisdiction to decide claims against the estate upon Charlotte's death.

On June 14, 2001, the Attorney General petitioned the court for leave to intervene on behalf of the People of the State of Illinois as the ultimate beneficiaries of any bequest to a charity and to adopt and join TLP's motion to vacate.  Roger and Rona filed motions to dismiss TLP's motion to vacate, Benjamin's motion to adopt and incorporate TLP's motion to vacate and the Attorney General's petition to intervene and adopt TLP's motion to vacate or, in the alternative, to deny the motions to vacate and intervene. 

On September 6, 2001, following a hearing, the court allowed Benjamin's motion to adopt, denied the Attorney General's motion to intervene and denied TLP and Benjamin's motions to vacate.  The court declared the motions to dismiss moot.  TLP, Benjamin and the Attorney General timely appealed the order.

The basis for the court's decision denying TLP and Benjamin's motions to vacate and the Attorney General's motion to intervene was that it felt that the agreed order had been entered properly.  We find that this determination could not be made without a full hearing regarding Charlotte's competence to make the estate planning decisions, which affected appellants' alleged beneficiary rights, and, as will be discussed below, TLP, Benjamin and the Attorney General were necessary parties to such a determination. Accordingly, we find that the court erred in denying TLP and Benjamin's motions to vacate and in denying the Attorney General's motion to intervene. 

As a preliminary matter, we briefly address (1) Benjamin's
 argument that the court had no jurisdiction to consider the motions to vacate because the court's jurisdiction to supervise Charlotte's estate terminated with her death; and (2) appellees' arguments that TLP and Benjamin's motions to vacate were insufficient because TLP and Benjamin did not file petitions to intervene establishing due diligence and 
the absence of another adequate remedy.  
We find no error in the court's decision to consider the motions to vacate.

Benjamin argues that the court's jurisdiction over the motions to vacate the agreed order terminated at Charlotte's death because the motions were brought in Charlotte's guardianship estate rather than her decedent's estate.  "The general rule is that, upon the ward's [disabled person's] death, both the guardianship and the trial court's jurisdiction to supervise the ward's estate necessarily terminate."  
In re Estate of Gebis
, 186 Ill. 2d 188, 193, 710 N.E.2d 385, 387 (1999).  "The Probate Act accords with this general rule, providing that * * * '[t]he office of the representative of a ward terminates * * * when the ward dies.'"  
Estate of Gebis
, 186 Ill. 2d at 193, 710 N.E.2d at 387, quoting 755 ILCS 5/24-12 (West 1996).  It is clear from the Probate Act that it is the power of the ward's representative, the guardian, to collect claims for and pay out claims against the ward's estate which ends upon the ward's death.  After the ward's death, that power rests with the executor or administrator of the estate and the guardian, in the role of "administrator to collect," has only the power to preserve the guardianship estate until an executor or administrator is appointed. 
 Estate of Gebis
, 186 Ill. 2d at 194, 710 N.E.2d at 388; 755 ILCS 5/24-19(a) (West 1998).  Concomitantly, because the guardian is powerless to pay a claim filed against a deceased ward's guardianship estate, "the trial court supervising the guardianship estate is powerless to adjudicate such claims, as jurisdiction lies only where the court can grant the particular relief requested."  (Emphasis omitted.)  
Estate of Gebis
, 186 Ill. 2d at 194, 710 N.E.2d at 388.  

Here, the relief requested is well within the purview of the guardianship court to grant.  When Charlotte died, the guardianship court's jurisdiction was confined to supervising the preservation of Charlotte's estate until her will was admitted to probate or letters of administration issued because that is what the guardian's duties were confined to.  
Estate of Gebis
, 186 Ill. 2d at 196, 710 N.E.2d at 389.  The intent of the Probate Act is that any claims for monies or bequests from the deceased ward's estate should be filed against the decedent's estate.  
Estate of Gebis
, 186 Ill. 2d at 194, 710 N.E.2d at 388.  Such are not the claims at issue here.  Contrary to appellees' view, TLP or Benjamin's assertions are not "tantamount to claims" against Charlotte for changing her revocable 
inter vivos
 trust.  Rather, TLP's assertions are of jurisdictional error by the court while Benjamin's are of fraud and undue influence against Roger and Rona and breach of fiduciary duty against Ostfeld.  

Neither TLP nor Benjamin is claiming against Charlotte herself or the estate.  As 
TLP stated in its motion to vacate, "It is axiomatic that if Charlotte Barth herself had taken steps to revoke and set aside Amendment No. 3, without involvement of a court of law, she would have been entirely within her rights to change her estate plan as long as the change did not involve misconduct or a mistake of fact or law."  The only claims here are for vacating an agreed order.  Supervising the preservation of the guardianship estate would entail deciding purely procedural matters such as motions to vacate because, if the agreed order was vacated, the only result would be a return to the status quo existing prior to entry of the agreed order.  If appellants, as alleged beneficiaries, then want to claim their share of the estate, they would file their claims against Charlotte's decedent's estate.  There was no error by the court in considering the motions to vacate.  See 
Altieri v. Estate of Snyder
, 262 Ill. App. 3d 427, 438-39, 633 N.E.2d 711, 718 (1992).

Section 2-408 of the Code of Civil Procedure provides that, upon timely application, the court can allow an applicant to intervene in an action, either permissively or as of right.  735 ILCS 5/2-408(a), (b) (West 1998).  The purpose of section 2-408 "is to liberalize the practice of intervention so as to avoid, upon timely application, the relitigation of issues in a second suit which were being litigated in a pending action."  
People ex rel. Birkett v. City of Chicago
, 202 Ill. 2d 36, 57, 779 N.E.2d 875, 887 (2002).  Therefore, "intervention is usually allowed only before judgment" (
O'Bannon v. Northern Petrochemical Co.
, 113 Ill. App. 3d 734, 737, 447 N.E.2d 985, 988 (1983)) and one "may not normally seek intervention after the rights of the original parties have been determined and a final decree entered" (
Citicorp Savings of Illinois v. First Chicago Trust Co. of Illinois
, 269 Ill. App. 3d 293, 298, 645 N.E.2d 1038, 1044 (1995)).  The decision to allow or deny intervention, whether permissively or as of right, is within the sound discretion of the trial court, and its judgment will not be reversed absent an abuse of that discretion.  
People ex rel. Birkett
, 202 Ill. 2d at 58, 779 N.E.2d at 888.

Contrary to appellees' assertion, Benjamin did file a 
petition to intervene, on February 7, 2001.  
Although the record does not contain an order allowing Benjamin's petition to intervene, the court presumably granted the petition since the record shows that the court allowed Benjamin to file his motion to adopt and incorporate TLP's motion to vacate, allowed Benjamin to participate in the hearing on the motion and, ultimately, allowed the motion to adopt.  
The record contains no objections to the adequacy of Benjamin's petition to intervene nor do appellees assert that they made any such objections.  Accordingly, appellees' arguments regarding the adequacy of Benjamin's petition to intervene are waived.  
Jorgensen v. Whiteside
, 263 
Ill. App. 3d
 998, 1002, 636 
N.E.2d
 735, 738 (1994); 735 ILCS 5/2-612(c) (West 1998).

 
TLP did not file a petition to intervene.  Rather, on January 11, 2001, it made an oral motion in the proceedings to close Charlotte's guardianship estate for leave to file an appearance.  On January 12, 2001, the court entered an order granting the motion without objection and TLP filed its appearance.  Subsequently, on February 9, 2001, the court set a briefing schedule giving TLP 21 days in which to file its motion to vacate.  TLP filed its motion on March 6, 2001.  The record does not reflect nor do appellees assert that they objected in the trial court to TLP's motion for leave to file an appearance, the court's giving permission to file the motion to vacate or TLP's filing of the motion to vacate on any grounds, let alone on the basis of the intervention
 statute.  Accordingly, appellees' argument on this basis are waived.

Moreover, a final decree, the agreed order, had already been entered.  As TLP states, there were no pending proceedings in which it could intervene.  Further, TLP had no standing, even as a beneficiary under the trust, to intervene in the proceedings that resulted in the agreed order because only the petition for appointment of a guardian of Charlotte's estate was before the court at that time and determination of that issue would not affect TLP's beneficial interest. 

TLP and Benjamin filed their motions to vacate pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 1998)).  T
he purpose of a section 2-1401 petition is to bring before the trial court facts not appearing in the record which, if known to the court at the time judgment was entered, would have prevented entry of the judgment.  
Physicians Insurance Exchange v. Jennings
, 
316 Ill. App. 3d 443, 457, 736 N.E.2d 179, 
190 (2000).  
The petitioner must set forth specific factual allegations supporting the following three elements:  (1) the existence of a meritorious claim or defense;  (2) due diligence in presenting this claim or defense to the trial court in the original action;  and (3) due diligence in filing the section 2-1401 petition.  
Smith v. Airoom, Inc.
, 114 Ill. 2d 209, 220-21, 499
 N.E.2d
 1381, 1386 (1986).  

If 
based on matters outside the trial record
,
 a section 2-1401 petition 
must be supported by sworn allegations of the party or parties having personal knowledge of the relevant facts, set forth either by verified petition or by attached affidavit in order to be legally sufficient.  
Padilla v. Vazquez
, 223 
Ill. App. 3d
 1018, 1025-26, 586 
N.E.2d
 309, 314 (1991).
  A party seeking section 2-1401
 relief must give notice to opposing parties pursuant to Supreme Court Rules 105 and 106 (134 Ill. 2d Rs. 105, 106).  
Padilla
, 223 
Ill. App. 3d
 at 1024, 586 
N.E.2d
 at 313.
  
It is within the sound discretion of the trial court whether to grant a section 2-1401 petition, and we will not disturb the court's
 judgment absent an abuse of that discretion.  
Airoom
, 114 Ill. 2d at 221, 499
 N.E.2d
 at 1386
.  We find that the court abused its discretion here.

Appellees argue that TLP's section 2-1401 motion to vacate should have been dismissed as insufficient because TLP allegedly did not aver timeliness or due diligence in filing its motion, did not verify its motion or attach affidavits, and did not serve the proper parties, including the executor of the estate, with notice of the motion as required pursuant to section 2-1401.  However, we find that the requirements of section 2-1401 do not apply to TLP's motion to vacate.

An order, judgment or decree entered by a court without jurisdiction of the subject matter or the parties, or by a court which lacks the inherent power to make or enter the order involved, is void and may be attacked, directly or collaterally, in any court, at any time.  
Sarkissian v. Chicago Board of Education
, 201 Ill. 2d 95, 103, 776 N.E.2d 195, 201 (2002); 
In re Estate of Steinfeld
, 158 Ill. 2d 1, 12, 630 N.E.2d 801, 806 (1994).  A motion attacking a judgment solely on the basis that it is void for lack of jurisdiction is not subject to the time limitations of section 2-1401 and negates the need to allege a meritorious claim or defense and due diligence; the requirements of section 2-1401 do not apply.  
Sarkissian
, 201 Ill. 2d at 104, 776 N.E.2d at 201-02; 
In re Marriage of Stefiniw, 
253 Ill. App. 3d 196, 200, 625 N.E.2d 358, 361 (1993).
  However, in a collateral attack on a judgment, "all presumptions are in favor of the validity of the judgment attacked, and want of jurisdiction must appear on the face of the record."  
Scheller v. Trustees of Schools of Township 41 North, Range 12, East of Third Principal Meridian
, 67 Ill. App. 3d 857, 866, 384 N.E.2d 971, 979 (1978).  The record itself must furnish the facts which establish that the court acted without jurisdiction.  
In re Marriage of Stefiniw, 
253 Ill. App. 3d at 201, 625 N.E.2d at 362.   

Here, TLP urged that the order should be vacated as void, asserting that 
the court lacked (1) personal jurisdiction because necessary parties affected by the order were not notified of the proceedings and (2) subject matter jurisdiction because (a) the court had no pleadings before it which requested the relief given and (b) the relief was not entered pursuant to the procedures set out in the Probate Act.
  
TLP relied on the record to support its arguments and did not bring additional facts to the court's attention.  Accordingly, because TLP challenged the agreed order solely on the basis of lack of jurisdiction evident from the record, its motion was not restricted by the requirements of section 2-1401 and we need not address appellees' arguments thereon.  
In re Estate of Steinfeld
, 158 Ill. 2d at 19, 630 N.E.2d at 809. 

Similarly, with regard to Benjamin's motion to vacate, the jurisdictional arguments he adopted from TLP's motion to vacate are the same as those discussed above and, therefore, with regard to those arguments, his motion to vacate need not comply with the requirements of section 2-1401.  However, Benjamin also asserted that the agreed order was procured by fraud, alleged 
undue influence and
 concealment of the facts by Roger and Rona and/or Ostfeld, and alleged breach of fiduciary duty by Roger and/or Ostfeld.  These  allegations are not apparent from the record.  "Where a motion to vacate a judgment is predicated upon error which is not apparent from the record and requires proof by other evidence, the party seeking to vacate the judgment must proceed under section 2-1401 and must comply with all of the requirements set forth in that section."  
In re Marriage of Stefiniw, 
253 Ill. App. 3d at 201, 625 N.E.2d at 362.  Accordingly, the requirements of section 2-1401 apply to these arguments.  

A petition for relief from judgment alleging fraud, undue influence or incompetence is insufficient as a matter of law unless verified or supported by affidavit.  
Storcz v. O'Donnell
, 256 
Ill. App. 3d
 1064, 1069, 628 
N.E.2d
 677, 681 (1993).  Benjamin 
did not attach an affidavit or other supporting evidence to his motion and there is no evidence in the record to support his fraud allegations.  These unsupported, conclusory allegations are inadequate to meet the requirements of section 2-1401 and insufficient to warrant relief under that section, and the trial court acted properly in denying the relief requested therein.  
Storcz
, 256 
Ill. App. 3d
 at 1070, 628 
N.E.2d
 at 
681.  

Whether TLP and Benjamin prevail on their claims that the agreed order is void for lack of jurisdiction is irrelevant to a determination of whether the requirements of 2-1401 restrict their motions.  
In re Estate of Steinfeld, 
158 Ill.2d at 19, 630 N.E.2d at 809.  It is sufficient that they challenged the order on that basis.  
In re Estate of Steinfeld, 
158 Ill.2d at 19, 630 N.E.2d at 809.  The requirements of section 2-1401 do not apply to those claims and the trial court, therefore, properly considered them.  However, we find that the court erred in denying the motions to vacate without a full hearing regarding Charlotte's competence to execute Amendment 3.        

In their motions to vacate, Benjamin and TLP argue that the agreed order is void for three reasons: (1) lack of personal jurisdiction because the order affected the interests of necessary parties who had not been notified of the proceedings; (2) lack of subject matter jurisdiction because the court did not have pleadings before it requesting the relief sought; and (3) lack of subject matter jurisdiction because the proceedings did not comply with the requirements of the Probate Act.  The crucial determination is whether TLP and Benjamin were necessary parties to the agreed order.  If they were necessary parties, the agreed order is void and should be vacated (
Schlosser v. Schlosser
, 218 Ill. App. 3d 943, 949, 578 N.E.2d 1203, 1207 (1991)) and we need not address TLP and Benjamin's second and third arguments. 

"[B]eneficiaries of a trust are necessary parties to an action to foreclose their interest," unless their interests are represented by others such that they receive actual and efficient representation or they are so numerous that it would be oppressive and burdensome to name them.  
Schlosser
, 218 Ill. App. 3d at 947, 578 N.E.2d at 1205, citing 
Illinois National Bank of Springfield v. Gwinn
, 390 Ill. 345, 356, 61 N.E.2d 249, 254-55 (1945), and
 Village of Lansing v. Sundstrom
, 379 Ill. 121, 125, 39 N.E.2d 987, 989 (1942).  "The beneficiary is a necessary party because he has the equitable and ultimate interest to be affected by the decree."  
Illinois National Bank of Springfield
, 390 Ill. at 356, 61 N.E.2d at 255.  If beneficiaries are deemed necessary parties, then failure to name them as parties renders a judgment void.  
Schlosser
, 218 Ill. App. 3d at 949, 578 N.E.2d at 1207.  Accordingly, the initial determination is whether TLP and Benjamin were beneficiaries of Charlotte's trust.  If they were beneficiaries, then it must be determined whether they were necessary parties to the agreed order. 

Charlotte executed amendment 3 on September 27, 1999, arguably creating a beneficial interest for TLP (and concomitantly, the Attorney General) and increasing Benjamin's beneficial interest.  The agreed order voided the amendment because Charlotte was, allegedly, incapable when she executed it.  However, we find no evidence in the record from which the court could have made this determination.   There is some evidence of Charlotte's capacity six months 
before
 executing the amendment (Justice Simon's report filed on March 10, 1999) and seven months 
after
 executing the amendment (Dr. Fox's report and Ostfeld's report, both filed on April 27, 2000).  There is no evidence of Charlotte's mental capabilities between the date Justice Simon filed his report on March 10, 1999, and the date that Dr. Fox first interviewed Charlotte on February 11, 2000, let alone for the specific date on which she executed the amendment, September 27, 1999.  "Since the law presumes every person sane until the contrary is proved, the burden rests on the party asserting the lack of testamentary capacity to prove it."  
Wiszowaty v. Baumgard
,  257 Ill. App. 3d 812, 816, 629 N.E.2d 624, 629 
(1994).  There is no evidence one way or the other that Charlotte was incapable to execute the amendment on September 27, 1999.  Therefore, whether TLP became a beneficiary under the trust pursuant to amendment 3 could not be determined from the evidence presented.  

Benjamin already had a beneficial interest prior to amendment 3.  Amendment 3 merely doubled his interest.  However, TLP's and Benjamin's interests were arguably eliminated and/or reduced by Charlotte's revocation of the amendment.  The agreed order makes bare mention of the revocation given the order held amendment 3 to be invalid.  Accordingly, if the court determines that Charlotte was competent when she executed the amendment, in order to determine whether TLP had a beneficial interest and whether Benjamin's beneficial interest was increased, it must then determine Charlotte's capacity when she executed the revocation.  If Charlotte was incapable when she executed the revocation, the revocation is invalid, TLP's and Benjamin's financial interests pursuant to amendment 3 were not affected by the purported revocation and they were beneficiaries of the trust when the agreed order was entered.  

As beneficiaries, unless they received adequate representation by others during the proceedings, failure to name TLP and Benjamin as necessary parties rendered the agreed order void.  
Schlosser
, 218 Ill. App. 3d at 949, 578 N.E.2d at 1207.  Again, this is a question of fact to be determined by the trial court.  If the court finds that TLP and Benjamin were necessary parties, then the court  lacked personal jurisdiction over the parties because it entered the agreed order without notice to all necessary parties and the agreed order is void. 

We find similarly with regard to the annuity of which Benjamin was the beneficiary.  Charlotte changed the beneficiary of the annuity to Benjamin on July 15, 1999.  As with her execution of amendment 3, there is no record of Charlotte's mental state at that time.  Justice Simon filed his report four months earlier, on March 10, 1999, while Dr. Fox and Ostfeld filed their reports nine months after the change, on April 27, 2000.  Moreover, Charlotte liquidated the annuity on April 7, 2000, and her incapacity on that date is also in question.  Therefore, whether Benjamin was ever the beneficiary of the annuity or remained the beneficiary such that he was entitled to notice of the proceedings regarding the agreed order, given its impact on the proceeds of the annuity, should be determined by the trial court.  Accordingly we remand to the trial court for a determination of whether TLP was a beneficiary under the trust and necessary party to the agreed order,  whether Benjamin was beneficiary under the annuity, and whether Benjamin was a necessary party to the agreed order pursuant to either the trust or the annuity.

We find similarly with regard to the Attorney General's petition to intervene.  The Attorney General filed his petition to intervene on behalf of the People of the State of Illinois as the ultimate beneficiaries of any bequest to a charity.   

" '[He] has the authority to protect a charitable trust and its property either defensively, where an attack is made on its validity, or by an action as plaintiff, by securing the construction of the trust instrument.  In a suit by others where the validity or the enforcement of a charitable trust may come into question the Attorney General should be made a party defendant.' "  
In re Estate of Stern,
 240 Ill. App. 3d 834, 837, 608 N.E.2d 534, 536
 (1992), quoting 
In re Estate of Tomlinson
, 65 Ill. 2d 382, 387, 359 N.E.2d 109, 111 (1976). 

"[F]unds which are appropriated for the benefit of society at large are considered to be held in a charitable trust, over which the Attorney General has regulatory authority.  There is no requirement that express trust language be used to qualify the funds as a 'charitable trust.'"  
In re Estate of Stern,
 240 Ill. App. 3d 834, 837, 608 N.E.2d 534, 536
 (1992).  Here, TLP is the charitable organization in question.  If TLP was a necessary party to the proceedings concerning the agreed order, the Attorney General could properly intervene on behalf of the People in this action to determine the validity of Charlotte's bequest.  Accordingly, the court erred in denying the Attorney General's petition to intervene and we remand to the trial court pending its determination of TLP's status.

Lastly, we consider Benjamin's claim in Charlotte's decedent estate.  Benjamin filed the claim against the estate, the trust, Roger, Rona, LaSalle Bank, Roger and Rona's attorney and his law firm, and Ostfeld and her law firm.  He accused them of fraud, contested the validity of the agreed order, contested the validity of Charlotte's liquidation of the annuity and of her purported change in its beneficiary, and requested imposition of a constructive trust on the proceeds of the liquidated annuity held by any party, including any legal fees paid to Ostfeld.
  The court granted Ostfeld's motion to dismiss Benjamin's claim against her and her firm, finding "lack of subject matter jurisdiction based on the court order of Oct., 2000 and 
res judicata
."  Benjamin appeals that order, arguing that the court should not have granted the dismissal on 
res judicata
 grounds because his appeal from the order dismissing his motion to vacate the agreed order in the guardianship case was still pending.  

The doctrine of
 res judicata 
bars relitigation of a cause of action between the same parties after a final judgment on the merits has been rendered by a court of competent jurisdiction.  
Saxon Mortgage, Inc. v. United Financial Mortgage Corp.
, 312 Ill. App. 3d 1098, 1104-05, 728 N.E.2d 537, 542 (2000).  The doctrine extends not just to those claims actually decided in the first action, but also to those issues that could have been decided in that action.   
Saxon Mortgage, Inc.
, 312 Ill. App. 3d at 1105, 728 N.E.2d at  542.  Whether a subsequent claim is barred by 
res judicata
 is a question of law, which we review 
de novo
.  
Saxon Mortgage, Inc.
, 312 Ill. App. 3d at 1105, 728 N.E.2d at  542.   

Benjamin's cause of action and claims in the decedent's estate are essentially the same as asserted in his motion to vacate the agreed order filed in the guardianship proceedings, filed against the same parties and alleging the same issues or issues that could have been raised in the guardianship proceedings.  
The question, therefore, is whether the guardianship court's denial of Benjamin's motion to vacate 
is a final judgment for purposes of 
res judicata
.  We find that it is.  The court held a full hearing on the motions to vacate and issued an order resolving the matter with finality: it dismissed the motion to vacate, thereby finding the agreed order valid and, concomitantly, liquidation of the annuity to be valid given that the legal fees were paid from the annuity and the balance of the proceeds were put into trust.  Although Benjamin appealed the denial of his motion to vacate, "a final judgment can serve as the basis to apply the doctrines of 
res judicata
 and collateral estoppel even though the judgment is being appealed."  
Illinois Founders Insurance Co. v. Guidish
, 248 Ill. App. 3d 116, 120, 618 N.E.2d 436, 440 (1993), citing 
Wiseman v. Law Research Inc.
, 133 Ill. App. 2d 790, 792, 270 N.E.2d 77, 79 (1971).  Therefore, the pending appeal of the guardianship court's order denying Benjamin's motion to vacate does not bar use of that order
 
for purposes of 
res judicata
. 

However
, where the judgment in one case is being appealed, conflicting judgments can result from allowing the judgment in that case to serve as the basis for 
res judicata
 in a second case since the judgment in the first case could be reversed on appeal.  
Illinois Founders Insurance Co.
, 248 Ill. App. 3d at 120-21, 618 N.E.2d at 440; 
Wiseman
, 133 Ill. App. 2d at  792, 270 N.E.2d at 79.  "[T]he only means of avoiding such conflicting judgments is to delay a decision in the second suit pending a decision on the appeal of the first."  
Illinois Founders Insurance Co.
, 248 Ill. App. 3d at 121, 618 N.E.2d at 440.  Where, as here, the court in the second case did not delay its judgment pending a decision in the appeal of the first case, we will generally reverse and remand the judgment in the second case with directions to stay proceedings until the appeal of the first case is resolved.  
Illinois Founders Insurance Co.
, 248 Ill. App. 3d at 123, 618 N.E.2d at 442; 
Wiseman
, 133 Ill. App. 2d at 793, 270 N.E.2d at 80.  Here, we reversed and remanded the judgment in the first case (guardianship court's denial of Benjamin's motion to vacate) to the trial court for a full hearing on the 2-1401 petition.  Therefore, we reverse and remand the judgment in the second case (dismissal on basis of 
res judicata
) with directions to the court to stay its proceedings until resolution of the case in the guardianship proceedings. 

For the reasons stated above, we (1) reverse and remand the trial court's denial of TLP and Benjamin's motions to vacate and its denial of the Attorney General's motion to intervene in the guardianship proceeding and (2) reverse and remand the dismissal of Benjamin's claim in the decedent estate proceeding with directions to stay proceedings pending resolution of the proceedings in the guardianship case.

Reversed and remanded.

THEIS, P.J., and GREIMAN, J., concur.