# Illinois Official Reports

## Appellate Court

---

**In re Estate of Ostern**, 2014 IL App (2d) 131236

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF OLGA ATTERBURY OSTERN (Christopher Gerard and Barker Gerard, Petitioners-Appellants, v. H. Lee Murphy and Leslie Bayer, Respondents-Appellees). |
| District & No. | Second District<br>Docket No. 2-13-1236 |
| Filed | November 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a dispute arising from an incident in which one daughter's theft of a substantial amount of money from the estate of her mother led the mother's two other children to create a trust for their mother's estate that would prevent the daughter who was convicted of felony theft in Pennsylvania for taking from her mother's estate from inheriting from her mother, the trial court erred in denying the petition filed by the children of the felonious daughter to vacate the order that allowed the creation of the trust, since the grandchildren were not given notice of the motion to create the trust, even though they were beneficiaries of their grandmother's estate at the time the motion to create the trust to exclude their mother from inheriting was filed, and they were necessary parties pending a showing under the financial exploitation statute that the grandmother fell within the exception to the statute allowing the felonious child to inherit based on clear and convincing evidence that the mother, with knowledge of her daughter's conviction, wanted her to inherit; furthermore, the grandchildren were never found not to be necessary parties, and finally, the vacation order would return the cause to the status quo existing prior to the creation of the trust and allow the trial court to adjudicate the parties' rights as potential heirs or beneficiaries. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 07-P-484; the Hon. Joseph M. Grady, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Christopher J. Berghoff, of Berghoff & Berghoff, of Chicago, for appellants. |
| | Stephen M. Cooper, Peter M. Storm, and Philip J. Piscopo, all of Cooper, Storm & Piscopo, of Geneva, for appellees. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. |
| | Justices Jorgensen and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1    On October 30, 2013, the trial court denied the petition of the petitioners, Christopher and Barker Gerard, to vacate an April 27, 2011, order that allowed the respondents, H. Lee Murphy and Leslie Bayer, to create a trust for the estate of their mother, Olga Atterbury Ostern. The petitioners appeal from this denial. We reverse and remand for additional proceedings.

¶ 2                                BACKGROUND

¶ 3    This case involves the application of section 2-6.6 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/2-6.6 (West 2010)) (hereinafter referred to as the "financial exploitation statute"). That section of the Probate Act provides:

"A person who is convicted of a violation of Section *** 17-56 *** of the Criminal Code of 1961 may not receive any property, benefit, or other interest by reason of the death of the victim of that offense, whether as heir, legatee, beneficiary, joint tenant, tenant by the entirety, survivor, appointee, or in any other capacity ***. The property, benefit, or other interest shall pass as if the person convicted of a violation of Section *** 17-56 *** of the Criminal Code of 1961 died before the decedent ***. Notwithstanding the foregoing, a person convicted of a violation of Section *** 17-56 *** of the Criminal Code of 1961 shall be entitled to receive property, a benefit, or an interest in any capacity and under any circumstances described in this Section if it is demonstrated by clear and convincing evidence that the victim of that offense knew of the conviction and subsequent to the conviction expressed or ratified his or her intent to transfer the property, benefit, or interest to the person convicted of a violation of Section *** 17-56 ***." 755 ILCS 5/2-6.6(a) (West 2010).

Section 17-56 of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/17-56 (West 2010)) addresses financial exploitation of an elderly person and states:

"A person commits financial exploitation of an elderly person *** when he or she stands in a position of trust or confidence with the elderly person *** and he or she knowingly and by deception or intimidation obtains control over the property of an elderly person or a person with a disability or illegally uses the assets or resources of an elderly person or a person with a disability."

¶ 4    On December 6, 2007, the respondents, who are two of Olga's three children, were appointed guardians of Olga's person and estate. Olga was a disabled adult who suffered diminished capacity as a result of suffering a stroke. On April 27, 2011, the respondents, as guardians and pursuant to section 11a-18(a-5)(6) of the Probate Act (755 ILCS 5/11a-18(a-5)(6) (West 2010)), filed a motion to create a trust for Olga. In the motion, the respondents alleged that Olga's will provided for an equal distribution of her estate to her three children: the respondents and Kimberly Gerard. However, the respondents stated that Kimberly was barred from receiving an inheritance by the financial exploitation statute (755 ILCS 5/2-6.6 (West 2010)), due to her conviction in Pennsylvania of 16 counts of felony theft by unlawful taking from Olga. The respondents asserted that the Pennsylvania conviction was essentially of the same crime as financial exploitation of an elderly person (see 720 ILCS 5/17-56 (West 2010)). The respondents alleged that the creation of the trust would benefit Olga's estate because it would allow for the transfer of assets without the costs of probate and it would ensure that Kimberly, who allegedly stole more than $1 million from Olga's estate, would not be eligible to inherit upon Olga's death. Attached to the motion were a new will and the proposed trust (the Ostern Trust), leaving Olga's estate in equal proportions to the respondents. The trust further provided that, if either respondent predeceased Olga, that share was to be distributed to the respondent's spouse. Also attached to the motion was a newspaper article discussing the plea agreement entered into by Kimberly in Pennsylvania. The record indicates that notice of the motion was sent to Kimberly.

¶ 5    On April 27, 2011, the trial court granted the motion to create the Ostern Trust. Specifically, the trial court's order stated that the motion was granted as to the form attached to the motion, "to the exclusion of Kimberly Gerard in accordance with 755 ILCS 5/2-6.6." The record indicates that Olga died on October 25, 2012.

¶ 6    On March 8, 2013, pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2012)), the petitioners filed a petition to vacate the order of April 27, 2011, and to dissolve the Ostern Trust. The petitioners are Kimberly's children. The petitioners alleged that Olga had a preexisting will and trust (the Atterbury Trust), dated August 2, 1999. Pursuant to the terms of the Atterbury Trust, it became irrevocable in late 1999, after Olga's second husband, Arthur Atterbury, died. The Atterbury Trust provided that, upon Olga's death, the estate would be distributed equally (25% each) to the respondents, Kimberly, and Amy Atterbury (Arthur's daughter from a previous marriage). The Atterbury Trust further provided that, if Kimberly predeceased Olga, Kimberly's share would be distributed equally to Kimberly's "then-living issue" *per stirpes*. If one of Olga's children predeceased her and that child had no living issue, the share set aside for the deceased child was to be distributed among Olga's remaining living children. There was no provision leaving any share to Olga's children's spouses.

¶ 7    The petitioners alleged that the motion to create the Ostern Trust did not mention the Atterbury Trust. Further, although Kimberly was sent notice of the motion, the petitioners alleged that they were not notified. Accordingly, the petitioners first argued that the April 2011

order was void for lack of jurisdiction over necessary parties, namely, the petitioners. The petitioners asserted that, as beneficiaries of the Atterbury Trust, they were necessary parties to the action because it foreclosed their interests in Olga's estate. Second, the petitioners argued that the failure to give notice was a violation of their due process rights. Third, the petitioners argued that the order was void because it exceeded the trial court's authority in that the trial court failed to consider, pursuant to section 11a-18(a-5) of the Probate Act (755 ILCS 5/11a-18(a-5) (West 2010)), whether Olga intended to disinherit the petitioners. Finally, the petitioners argued that the April 2011 order should be vacated as a matter of equity because there was no evidence that they were in any way involved in the financial exploitation of Olga.

¶ 8 On April 17, 2013, the respondents filed an unverified response to the petition to vacate. The respondents alleged that allowing the petitioners to inherit from Olga would be an indirect benefit to Kimberly, which was prohibited by the financial exploitation statute (755 ILCS 5/2-6.6 (West 2010)). The respondents argued that the petitioners were not entitled to notice of the motion to create the Ostern Trust, because they were only contingent remainder beneficiaries. They alleged that Kimberly was properly notified and that such notice was sufficient under the virtual representation standard of the Trusts and Trustees Act (Trustees Act) (760 ILCS 5/16.1(a)(2) (West 2010)).

¶ 9 On May 22, 2013, the petitioners filed a reply. The petitioners stated that they had no direct knowledge of the nature and extent of the funds stolen from Olga or whether restitution was made, and they demanded strict proof thereof. They also denied that their inheritance would in any way benefit Kimberly. They further argued that they had no knowledge of whether Kimberly was properly notified of the motion to create the trust and that the virtual representation standard was not applicable.

¶ 10 On September 23, 2013, the petitioners filed a brief in support of their petition to vacate the April 2011 order. In addition to the arguments raised in the petition, the petitioners argued that the order went beyond what was allowed by the financial exploitation statute, because the Ostern Trust not only excluded Kimberly but also excluded the petitioners and provided for the respondents' spouses to take shares if the respondents died. The petitioners further argued that the virtual representation standard of the Trustees Act did not apply because there was no existing trust for the Act to apply to. The respondents' motion to create the Ostern Trust was not meant to amend the Atterbury Trust; its purpose was to create a whole new trust. Alternatively, the petitioners argued that, if the Trustees Act applied, they were entitled to notice of the motion to create the Ostern Trust as "presumptive remainder beneficiaries" because, as of the creation of the Ostern Trust, Kimberly was presumed dead under the financial exploitation statute and they were entitled to inherit her share *per stirpes* under the Atterbury Trust.

¶ 11 Finally, the petitioners argued that the financial exploitation statute barred only Kimberly from inheriting and that there was no evidence that Kimberly would receive any benefit should they receive their inheritance. They analogized the financial exploitation statute to the "slayer statute" (720 ILCS 5/2-6 (West 2010)). Under that statute, a murderer cannot benefit financially from his or her victim's death. The petitioners argued that case law had interpreted the slayer statute as requiring a court to make a factual determination as to whether an inheritance by a relative of the murderer would confer a significant benefit on the murderer. If not, the relative could receive an inheritance. The petitioners argued that, under this reasoning,

they are entitled to their inheritance since they are adults and there would be no benefit to Kimberly.

¶ 12    On October 28, 2013, the respondents filed a brief in opposition to the petition to vacate the April 2011 order. The respondents argued that, when the motion to create the Ostern Trust was filed, Kimberly was a primary remainder beneficiary of the Atterbury Trust and that, under the virtual representation standard of the Trustees Act, Kimberly was presumed to have represented and bound her successors. The respondents also argued that it would violate public policy to allow Kimberly's children to inherit from the person she exploited. Allowing the petitioners to collectively inherit one-third of Olga's estate would be punitive to the other beneficiaries where Kimberly had committed significant theft from the estate. The respondents argued that Kimberly and the petitioners had already realized enjoyment from the use of the stolen funds. The respondents acknowledged that, under the plain language of the financial exploitation statute, it would make sense to allow the petitioners to inherit based on the *per stirpes* provision of the Atterbury Trust. However, the respondents argued, courts have looked beyond the plain language of a statute in a similar context, namely, the slayer statute. The respondents cited cases interpreting similar language in the slayer statute as prohibiting an heir of the murderer from inheriting from the victim, due to a possible indirect benefit. Finally, the respondents argued that, if the petitioners were entitled to inherit, equity required that their share be reduced by an amount equivalent to the amount stolen by Kimberly from the estate.

¶ 13    On October 13, 2013, a hearing was held on the petition to vacate the April 2011 order. The parties stated that they wished to rely on their written arguments. In addition, the petitioners argued that they should be allowed the opportunity to be heard as to whether their interests in Olga's estate should be severed. They asserted that there was no evidence that their inheritance would benefit Kimberly. They also argued that they never received notice of the motion because neither petitioner lived with Kimberly when notice was allegedly sent to her. The record indicates that in 2011 the petitioners were adults. The respondents alleged that, although Kimberly had stolen about a million dollars from the estate, Olga's million-dollar home was returned to Olga as a result of Kimberly's plea bargain. The respondents further argued that it would benefit Kimberly to see her children inherit one-third of Olga's estate. However, the respondents argued, if the court determined that the petitioners were entitled to an inheritance, it should be offset by the amount Kimberly had stolen from the estate.

¶ 14    Following argument, the trial court denied the petitioners' section 2-1401 petition. The trial court stated that the pleadings were "voluminous" and that it had not gone through them all. The trial court found that if the petitioners received an inheritance it would benefit Kimberly because "children normally take care of their parents." The trial court further found that, at the time of the motion to create the Ostern Trust, the petitioners were not yet entitled to anything and that notice to their mother was sufficient. Thereafter, the petitioners filed a timely notice of appeal.

¶ 15                                    ANALYSIS

¶ 16    On appeal, the petitioners argue that the trial court erred in denying their section 2-1401 petition. They raise two arguments in support of this contention. First, they argue that the April 2011 order is void for lack of jurisdiction, because they were necessary parties to the motion and were not sent notice. The petitioners also argue that the order exceeded the scope of the

financial exploitation statute and that the respondents thereby breached their fiduciary duty to Olga. Because we find the first argument dispositive, we will not reach the latter argument.

¶ 17 As stated, the petitioners first argue that the April 2011 order is void for lack of jurisdiction, because they were necessary parties and were not sent notice of the motion. It is well settled that a judgment entered by a court that lacks jurisdiction of the parties is void and may be attacked at any time or in any court, either directly or collaterally, such as through a section 2-1401 petition. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103 (2002). Where, as in this case, the trial court disposes of a section 2-1401 petition on the pleadings, our review is *de novo*. *People v. Vincent*, 226 Ill. 2d 1, 18 (2007); see also *Deutsche Bank National Trust Co. v. Hall-Pilate*, 2011 IL App (1st) 102632, ¶ 12 (a judgment entered on a section 2-1401 petition requesting relief on the basis that the judgment is void is reviewed *de novo*).

¶ 18 "A necessary party is one whose participation is required to (1) protect its interest in the subject matter of the controversy which would be materially affected by a judgment entered in its absence; (2) reach a decision protecting the interests of the parties already before the court; or (3) allow the court to completely resolve the controversy." *Zurich Insurance Co. v. Baxter International, Inc.*, 275 Ill. App. 3d 30, 37 (1995), *aff'd as modified*, 173 Ill. 2d 235 (1996). "[B]eneficiaries of a trust are necessary parties to an action to foreclose their interest," unless their interests are represented by others such that they receive actual and efficient representation or unless they are so numerous that it would be oppressive and burdensome to name them. *Schlosser v. Schlosser*, 218 Ill. App. 3d 943, 947 (1991). "The beneficiary is a necessary party because he has the equitable and ultimate interest to be affected by the decree." *Illinois National Bank of Springfield v. Gwinn*, 390 Ill. 345, 356 (1945). If beneficiaries are deemed necessary parties, then the failure to name them as parties renders a judgment void. *Schlosser*, 218 Ill. App. 3d at 949.

¶ 19 In the present case, we hold that the petitioners were beneficiaries of the Atterbury Trust when the respondents filed their motion to create the Ostern Trust. The basis on which the motion was brought, and the basis on which the motion was granted, was that Kimberly was precluded from inheriting from Olga, pursuant to the financial exploitation statute (755 ILCS 5/2-6.6 (West 2010)), because of her conviction in Pennsylvania of felony theft. Pursuant to the financial exploitation statute, once a person is convicted of certain offenses, including financial exploitation of an elderly person, that person is precluded from an inheritance. Accordingly, in this case, when the motion to create the Ostern Trust was filed, Kimberly was to be legally treated as predeceasing Olga. *Cf. Trent v. Office of the Coroner*, 349 Ill. App. 3d 276, 281 (2004) (once a person is convicted of first-degree murder, he is barred from receiving any benefit from the victim's estate and is legally viewed as predeceasing the victim). According to the Atterbury Trust, if Kimberly predeceased Olga, her share would be distributed to Kimberly's children, *per stirpes*. Therefore, because Kimberly was considered legally deceased at the time of the motion, the petitioners were beneficiaries of the Atterbury Trust and were entitled to notice of the proceeding. The failure of the respondents to notify the petitioners rendered the trial court's April 2011 order void for lack of jurisdiction over all the necessary parties. *Schlosser*, 218 Ill. App. 3d at 949. (Additionally, we note that the record does not indicate whether Amy Atterbury was ever sent notice of the motion and whether she was a necessary party.)

¶ 20 The respondents argue that Kimberly was not convicted of financial exploitation, or its Pennsylvania equivalent, and thus was not subject to the financial exploitation statute.

- 6 -

However, this argument is completely at odds with the position taken in their motion to create the Ostern Trust and in the proceeding below. We will not countenance a complete reversal of position for the first time on appeal. See *Byer Clinic & Chiropractic, Ltd. v. State Farm Fire & Casualty Co.*, 2013 IL App (1st) 113038, ¶ 20 (party is judicially estopped from assuming a position in a legal proceeding contrary to a position it held in a prior legal proceeding). Moreover, if the financial exploitation statute did not apply, then there was no basis for the motion to create the Ostern Trust and no basis for the trial court's order allowing the creation of the Ostern Trust. The trial court's order specifically stated that the motion was granted pursuant to the financial exploitation statute. Accordingly, even if this argument had merit, it would not change the result, as we would still hold that the order is void.

¶ 21   The respondents next argue that the petitioners were not interested parties because the financial exploitation statute did not necessarily disqualify Kimberly from an inheritance. Specifically, the respondents point to the section of the statute that provides that the convicted financial exploiter shall be entitled to receive property "if it is demonstrated by clear and convincing evidence that the victim of the offense knew of the conviction and subsequent to the conviction expressed or ratified his or her intent to transfer" property to the person convicted. See 755 ILCS 5/2-6.6(a) (West 2010). Based upon this provision, the respondents argue that whether Kimberly "statutorily died" before Olga could not be known until Olga's own death. Therefore, Kimberly retained an ability to inherit through the Atterbury Trust and the petitioners were not necessary parties.

¶ 22   Once again, this position is contrary to the position taken below, where the respondents repeatedly relied on the application of the financial exploitation statute as automatically barring Kimberly from an inheritance. Even leaving aside this reversal of position, we find this argument to be without merit. In construing a statute, our task is to "ascertain and give effect to the legislature's intent." *Lieb v. Judges' Retirement System of Illinois*, 314 Ill. App. 3d 87, 92 (2000). The best indicator of the legislature's intent is the plain language of the statute. *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003). "When the statute's language is clear, it will be given effect without resort to other aids of statutory construction." *Id.* We will not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *Petersen v. Wallach*, 198 Ill. 2d 439, 446 (2002).

¶ 23   In this case, the statute's language is clear. Once Kimberly was convicted of financial exploitation of Olga, she was precluded from receiving an inheritance, and treated legally as if she predeceased Olga, unless she proved by clear and convincing evidence that Olga, with knowledge of Kimberly's conviction, wanted otherwise. Therefore, the petitioners were beneficiaries of the Atterbury Trust upon Kimberly's conviction, and thus were necessary parties to the motion to create the Ostern Trust, pending a showing of the statutory exception. The respondents argue that nothing in the financial exploitation statute provides for "instant successorship" and cite *In re Estate of Mueller*, 275 Ill. App. 3d 128 (1995), for the proposition that the slayer statute did not apply until the "administrator was seeking to exclude the slayer." However, even if we were to apply that logic here, such that Kimberly legally predeceased Olga only when the respondents sought to exclude Kimberly by creating the Ostern Trust, the petitioners were beneficiaries at that point and necessary parties to the respondent's motion.

¶ 24    The respondents next argue that notice to Kimberly was sufficient under the virtual representation standard of the Trustees Act (760 ILCS 5/16.1(a)(2) (West 2010)). That statute provides:

> "(2) If all primary beneficiaries of a trust either are adults and not disabled, *** the actions of such primary beneficiaries *** shall represent and bind all other persons who have a successor, contingent, future, or other interest in the trust and who would become primary beneficiaries only by reason of surviving a primary beneficiary.
>
> For purposes of this Section, 'primary beneficiary' means a beneficiary who is either: (i) currently eligible to receive income or principal from the trust or (ii) assuming nonexercise of all powers of appointment, will be eligible to receive a distribution of principal from the trust if the beneficiary survives to the final date of distribution with respect to the beneficiary's share." *Id.*

However, pursuant to the financial exploitation statute, which was relied on by the respondents in their motion to create the Ostern Trust and by the trial court in granting that motion, Kimberly was not a "primary beneficiary" under the Trustees Act, as she was barred from an inheritance by her conviction. Thus, she could not represent the petitioners' interests.

¶ 25    In arguing that the virtual representation standard applies, the respondents rely on *In re Estate of Mayfield*, 288 Ill. App. 3d 534 (1997). In that case, the reviewing court determined that a father had the right to bind his children not to contest his mother's will. *Id.* at 541. However, in reaching that determination, the court stated that such a policy applied where a parent and children have a common right or interest, where there is no conflict between the parent and any child, and where the parent effectively protects the rights of the children. *Id. Mayfield* is distinguishable because in this case Kimberly and the petitioners did not have a common interest. As conceded by the respondents, Kimberly was barred from an inheritance pursuant to the financial exploitation statute, while the petitioners possibly retained the right to inherit her share under the Atterbury Trust. Moreover, unlike in *Mayfield*, Kimberly did not protect the rights of her children. Although she allegedly received notice, the petitioners alleged that she did not notify them of the proceeding or contest the proceeding on their behalf.

¶ 26    The respondents further argue that, under section 11a-18(a-5) of the Probate Act (755 ILCS 5/11a-18(a-5) (West 2010)), notice was not required to be given to the petitioners. Under that section, the trial court had discretion to require notice to be given to interested persons "as the court directs." 755 ILCS 5/11a-18(a-5) (West 2010). However, it is undisputed that the respondents never notified the court about the existence of the Atterbury Trust. Most significantly, the respondents' motion to create the Ostern Trust did not mention the Atterbury Trust. Accordingly, the court never determined that the petitioners were not necessary parties. The respondents also argue that there is no case law holding that children not named in a will are entitled to notice of any modification in the estate plan when their grandparent and parents are still living. This argument is without merit, as the Atterbury Trust did name the petitioners as beneficiaries in the event that Kimberly predeceased Olga. Based on the application of the financial exploitation statute, as urged by the respondents below, Kimberly legally predeceased Olga.

¶ 27    The respondents next argue that the petitioners did not have standing to object to the motion to create the Ostern Trust, because a will and revocable trust conferred no rights on anyone. However, lack of standing is an affirmative defense that is forfeited if not raised in a

timely manner in the trial court. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252-53 (2010). Here, the respondents did not assert a lack of standing in the trial court and this argument is forfeited. *Id.* Even absent forfeiture, this argument is without merit. While a beneficiary has no interest in a will until the death of the testator, the beneficiary of a trust has an interest the moment the trust is created. *In re Estate of Michalak*, 404 Ill. App. 3d 75, 83 (2010). Here, the Atterbury Trust provided for the creation of a marital and residual trust upon Arthur's death. The residual portion of the trust was irrevocable. Accordingly, because Kimberly legally predeceased Olga pursuant to the financial exploitation statute, as argued by the respondents in their motion to create the Ostern Trust, the petitioners became primary beneficiaries of the residual portion of the Atterbury Trust and thus had an interest requiring notice of the proceeding on the motion to create the Ostern Trust.

¶ 28    Finally, the respondents argue that the trial court lacked jurisdiction to vacate its April 2011 order, because Olga had died and, therefore, the trial court lost its jurisdiction to supervise her guardianship estate. In so arguing, the respondents rely on *In re Estate of Gebis*, 186 Ill. 2d 188 (1999). As stated in that case, "[t]he general rule is that, upon the ward's [(disabled person's)] death, both the guardianship and the trial court's jurisdiction to supervise the ward's estate necessarily terminate." *Id.* at 193. Instead, after the ward's death, that power rests with the executor or administrator of the estate, and the guardian, in the role of "administrator to collect," has only the power to preserve the guardianship estate until an executor or administrator is appointed. *Id.* (citing 755 ILCS 5/24-19(a) (West 1996)). "Concomitantly, because the guardian is powerless to pay a claim filed against a deceased ward's guardianship estate, 'the trial court supervising the guardianship estate is powerless to adjudicate such claims, as jurisdiction lies only where the court can grant the particular relief requested.' " (Emphasis omitted.) *In re Estate of Barth*, 339 Ill. App. 3d 651, 660 (2003) (quoting *Gebis*, 186 Ill. 2d at 194).

¶ 29    However, this court has previously called into question the continuing vitality of *Gebis* in light of the supreme court's subsequent holdings in *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514 (2001), *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325 (2002), and *People ex rel. Graf v. Village of Lake Bluff*, 206 Ill. 2d 541 (2003). See *In re Alex T.*, 375 Ill. App. 3d 758, 759-63 (2007). Thus, the respondents' assertion that the trial court lacked jurisdiction lacks a firm foundation. In light of *Belleville Toyota*, it is clear that the jurisdiction of the circuit courts of this state comes not from the legislature but from the state constitution. *Belleville Toyota, Inc.*, 199 Ill. 2d at 334. The extent of the trial court's authority under the Probate Act simply is not a jurisdictional issue. *Alex T.*, 375 Ill. App. 3d at 759-63.

¶ 30    In any event, a similar argument was rejected in *In re Estate of Barth*, 339 Ill. App. 3d 651, 659-61 (2003). In that case, it was argued that the guardianship court lost jurisdiction to vacate an agreed order entered in a guardianship proceeding, because the ward had died. *Id.* at 659. The reviewing court disagreed and held that the relief requested was within the power of the guardianship court to grant. *Id.* at 660. The reviewing court noted that when the ward died the guardianship court's jurisdiction was confined to supervising the preservation of the ward's estate until her will was admitted to probate or letters of administration issued. *Id.* Thereafter, any claims for money or bequests from the estate had to be filed against the estate. *Id.* The reviewing court found that the claim at issue (a motion to vacate an agreed order) was not a claim against the estate for money or bequests. *Id.* Rather, it was an assertion of jurisdictional error by the court. *Id.*

¶ 31    In the present case, as in *Estate of Barth*, the claim at issue is not a claim against the estate, it is an assertion of jurisdictional error by the court. Accordingly, the trial court had jurisdiction to vacate its April 2011 order. *Id.* The respondents argue that, if the April 2011 order is vacated, the trial court would be without authority to authorize or require a substitute trust or to take other action to exclude Kimberly. We disagree. The result is to return to the status quo existing prior to the creation of the Ostern Trust, where the trial court could properly adjudicate the parties' rights as potential heirs or beneficiaries of Olga's estate.

¶ 32                                      CONCLUSION

¶ 33    For the foregoing reasons, the judgment of the circuit court of Kane County is reversed and the cause remanded for additional proceedings consistent with this decision.

¶ 34    Reversed and remanded.