No. 3--03--0206

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2004

ROSE M. TRENT, JAMES C. TRENT, ) Appeal from the Circuit Court

and JAMES CLARK, ) of the 10th Judicial Circuit, 

 ) Peoria County, Illinois,

Plaintiffs-Appellants, )

 )

v. ) No. 03--MR--1 

 )

OFFICE OF THE CORONER OF PEORIA )

COUNTY, ILLINOIS, and DANIEL )

HEINZ, PEORIA COUNTY CORONER, ) Honorable

                                ) John A. Barra,

Defendants-Appellees. ) Judge, Presiding.

_________________________________________________________________

JUSTICE SCHMIDT delivered the opinion of the court:

_________________________________________________________________

The plaintiffs, Rose M. Trent, James C. Trent and James Clark, filed a 
pro se 
complaint under our state's Freedom of Information Act (the Act) (5 ILCS 140/1 
et seq
. (West 2002)) against the defendants, the office of the coroner of Peoria County and Daniel Heinz, in his official capacity as Peoria County coroner.  The plaintiffs are attempting to obtain medical records of C.N., a deceased minor.  The trial court ruled that the plaintiffs are not entitled to receive C.N.'s medical records.  On appeal, the plaintiffs argue that the trial court erred in ruling that the records they seek are exempt from disclosure under the Act (5 ILCS 140/7(1)(b) (West 2002)) even though the plaintiffs have acquired a signed authorization from the deceased child's mother, Katrina Harden.  We affirm.

BACKGROUND

Plaintiff James Trent and Katrina Harden are currently incarcerated in the Illinois Department of Corrections (DOC).  They were both convicted of murdering C.N., who was four years old at the time of her death on July 20, 1996.  Harden pled guilty and agreed to testify against Trent in exchange for the State's agreement not to seek the death penalty.  James Trent appealed to this court in 
People v. Trent
, 315 Ill. App. 3d 437, 734 N.E.2d 1 (2000).  The facts stated in that appeal set forth the brutal murder of this four-year-old child.   While James Trent and Harden were living together, they repeatedly struck C.N. with a belt, a metal spatula and a metal pole.  Trauma from this severe beating caused C.N.'s death.

The remaining plaintiffs, Rose Trent and James Clark, filed various requests under the Act in an attempt to obtain C.N.'s medical records.  On April 15, 1999, Rose went to the Peoria County coroner's office and orally requested to inspect and copy various documents related to C.N.'s death.  Rose asserted that her request for the documents was pursuant to the Act.   Initially, the coroner's office denied Rose's request.

On May 4, 2000, Rose submitted a written request for the documents under the Act.  Accompanying this written request was a signed authorization from Harden directing the coroner's office to release C.N.'s medical records to Rose.  On May 8, 2000, the Peoria County coroner denied Rose's request in writing.

On November 15, 2000, James Trent sent a similar request for documents to the coroner's office.  On November 28, 2000, that request was denied.

On January 26, 2002, James Clark submitted a written request for the documents under the Act.  This request also was accompanied by a signed authorization from Katrina Harden.  On February 4, 2002, Clark's request was denied.

The plaintiffs exhausted their administrative remedies regarding their requests.  Then, on January 2, 2003, the plaintiffs filed their complaint seeking declaratory and injunctive relief under the Act.  Among other documents, the plaintiffs sought C.N.'s medical records from (1) Saint Francis Medical Center; and (2) Methodist Hospital.

The defendants filed their answer on January 17, 2003.  They contend that C.N.'s medical records are not subject to disclosure under the Act. 

Eventually, the coroner's office supplied the plaintiffs with some of the documents they had requested, but not the decedent's medical records.  At the hearing on the complaint, the trial court stated that the medical records were exempt from disclosure under the Act.  The court commented that the authorization signed by Katrina Harden "might apply, if at all, to a request for these records directly from the hospitals."  Plaintiffs appeal.

ANALYSIS

The plaintiffs argue that the trial court erred by ruling they were not entitled to disclosure of the medical records under the Act.

We are called upon to interpret portions of the Act and other Illinois statutes.  It is axiomatic that when interpreting a statute, we must ascertain and give effect to the intent of the legislature when it enacted the statute.
  Heck v. Central Illinois Light Co.
, 152 Ill. 2d. 401, 405, 604 N.E.2d 939, 941 (1992).  The language of the statute itself provides the best indication of the drafters' intent.  
Kirwan v. Welch, 
133 Ill. 2d 163, 165, 549 N.E.2d 348, 349 (1989).   Where the language of a statute is clear and unambiguous, a court of review must give it effect as written, without reading exceptions, limitations or conditions into the statute.  
Davis v. Toshiba Machine Co., America
, 186 Ill. 2d 181, 184-85, 710 N.E.2d 399, 401 (1999). Because interpretation of a statute is a question of law, our review is 
de novo
.  
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254, 659 N.E.2d 961, 965 (1995). 

Under the Act, "Each public body shall make available to any person for inspection or copying all public records, except as otherwise provided in Section 7 of [the] Act."  5 ILCS 140/3(a) (West 2002).

" 'Public records' means all records, reports, forms, writings, letters, memoranda, books, papers, *** and all other documentary materials, *** having been prepared, or having been or being used, received, possessed or under the control of any public body."  5 ILCS 140/2(c) (West 2002).

"(1) The following shall be exempt from inspection and copying:

***

(b) Information that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy, unless the disclosure is consented to in writing by the individual subjects of the information."  5 ILCS 140/7(1)(b) (West 2002).

In this case, the parties do not dispute that the coroner's office is a "public body" under the Act.  C.N.'s medical records are "public records," as defined by the Act, because the records were used, received, possessed and under the control of the defendants.

There is also no dispute that an individual's medical records constitute "[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy."   5 ILCS 140/7(1)(b) (West 2002).  An individual's medical records fall squarely within this exemption for documents, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.  Therefore, the issue is whether the authorization signed by the decedent's murderer, who also happened to be the decedent's mother, is sufficient to require disclosure under the Act.  For the reasons set forth below, we hold it is not.  

Documents otherwise exempt from disclosure under section 7(1)(b) may be released only if "the disclosure is consented to in writing by the individual subjects of the information."  5 ILCS 140/7(1)(b) (West 2002).

The "individual subject of the information" sought under the Act was C.N.  The Act makes no provision for a written consent to be submitted by a third party in the event the subject of the information is deceased.  The plain language of the Act only permits disclosure of privileged information with the written consent of "the individual subjects of the information."  5 ILCS 140/7(1)(b) (West 2002).  Here, the plaintiffs do not possess written consent from C.N., which is necessary to release medical records under the Act.  We will not read an exception into the Act by grafting into it language from the Code of Civil Procedure regarding physician-patient privilege release provisions.  

Plaintiffs cite section 8--802 of the Code of Civil Procedure (the Code) (735 ILCS 5/8--802
 (West 2002)) and suggest this allows them to obtain C.N.'s medical records in light of the signed authorization they have acquired from C.N.'s mother.  We disagree.

Section 8--802 of the Code governs the physician-patient privilege.  It states:

"No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient *** except only *** with the expressed consent of the patient, or in case of his or her death[,] *** [a] person authorized to sue for personal injury ***."  735 ILCS 5/8--802 (West 2002).

We are aware of no authority that allows a mother convicted of murdering her child to sue for that child's personal injuries. 

Only the personal representative of a decedent may bring an action under the Wrongful Death Act.  740 ILCS 180/2 (West 2002).  A person who has been convicted of a felony may neither be appointed guardian of a child's estate (755 ILCS 5/11--3(a) (West 2002)) nor named administrator of an estate of a decedent who dies intestate (755 ILCS 5/9--1 (West 2002)).  

We also find relevance in section 2--6 of the Probate Act of 1975 (755 ILCS 5/2--6 (West 2002)) commonly known as the slayer statute.  It provides, in relevant part: 

"§ 2--6.  Person causing death.  A person who intentionally and unjustifiably causes the death of 

another shall not receive any property, benefit, or 

other interest by reason of the death, whether as 

heir, legatee, beneficiary, joint tenant, survivor, appointee or in any other capacity and whether the 

property, benefit, or other interest passes pursuant 

to any form of title registration, testamentary or nontestamentary instrument, intestacy, renunciation, 

or any other circumstance.  The property, benefit, 

or other interest shall pass as if the person causing 

the death died before the decedent ***. *** A person convicted of first degree murder or second degree 

murder of the decedent is conclusively presumed to have caused the death intentionally and unjustifiably for purposes of this Section."  755 ILCS 5/2--6 (West 2002). 

We find the authorization signed by C.N.'s mother is invalid and provides no legal basis for disclosure of C.N.'s medical records.  

As a matter of law, once Katrina Harden was convicted of first degree murder of the decedent, she was conclusively presumed to have caused the death of C.N. and, therefore, forever barred from receiving "any property, benefit, or other interest" from C.N.'s estate.  755 ILCS 5/2--6 (West 1996).   Legally, Katrina Harden is viewed as predeceasing her daughter. 

Because Katrina Harden has no legal right to receive any property or benefit from C.N.'s estate and she cannot be appointed guardian of C.N.'s estate,  the releases she signed are not valid under the Code as she is not, as a matter of law, a "person authorized to sue for personal injury" on C.N.'s behalf.

It is clear that, even under the broader authorization provisions of the Code, a physician or hospital would not be authorized to release C.N.'s medical records on the authorization of Katrina Harden.  Therefore, even if we were to graft the Code language onto the Act, as plaintiffs suggest, this would be of no help to their case.  Any authorization signed by Katrina Harden is of no effect as it relates to C.N.'s medical records.  The plaintiffs, with the help of Harden, seek to have C.N.'s medical records sent to one of her convicted murderers at Stateville Penitentiary.  The indignities visited upon this four-year-old little girl in life will not be perpetuated against her after her death.

We believe that the comments recently made by the Seventh Circuit in discussing the federal Freedom of Information Act (5 U.S.C.A. §552 (West 1996)) (FOIA) are equally applicable to our Freedom of Information Act.  The Seventh Circuit noted:

     "The FOIA has a noble goal: it contemplates a 

policy of broad disclosure of government documents to 

serve the 'basic purpose of ensuring an informed 

citizenry, vital to the functioning of a democratic society.' [Citation.]  Stated another way, the FOIA's central purpose is to guarantee 'that the 
Government's
 activities be opened to the sharp eye of public 

scrutiny, not that information about 
private citizens 

that happens to be in the warehouse of the Government 

be so disclosed.' [Citation.]"  (Emphasis in original.)  
Lakin Law Firm v. Federal Trade Comm'n,
 352 F.3d 1122,   1123 (7th
 Cir. 2003).  

CONCLUSION

The circuit court of Peoria County is affirmed.  

Affirmed.  

SLATER, J., concurs.

HOLDRIDGE, P.J., specially concurs.

PRESIDING JUSTICE HOLDRIDGE, specially concurring:

I agree with the holding that the office of the coroner was not obligated to disclose the medical records it obtained from the attending physicians who rendered medical treatment at St. Francis Medical Center and Methodist Hospital in Peoria.  However, I do not agree with the majority’s reliance upon section 7(1)(b) of the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/7(1)(b) (West 2002) to establish a privacy right of an individual extending beyond death.  I am convinced that the majority’s reliance upon such a privacy interest of the deceased is misplaced as there is no common law or statutory right of privacy surviving beyond death.  See, 
National Archives and Records Administration v. Favish
, 
   
 U.S. 
    
 (No. 02--945, March 30, 2004) (holding under the federal FOIA that no privacy right survives decedent, rather post-death privacy rests with the surviving family).  Here, under privacy interest analysis, the facts would warrant disclosure, since the survivors assert no privacy interest in their own vein.    

Rather, I believe that disclosure of the medical records sought from the coroner in the instant matter is prohibited under section 7(1)(a) of the FOIA, which provides:

"(1) The following shall be exempt for inspection and copying:

 ***

   (a) Information specifically prohibited from disclosure by federal or State law or rules and regulations adopted under federal or State law."  5 ILCS 140/7(1)(a) (West 2002).  

Here, the medical records sought from the coroner’s office were provided to it under the privacy of medical records provisions of the Code of Civil Procedure.  735 ILCS 5/8--802 (West 2002).  I would find that the restrictions upon disclosure provided in the Code of Civil Procedure follow those medical records when they were provided to the coroner’s office pursuant to its investigation into the cause of death of C.N.  Thus, like the physicians who first generated the medical records in question, the coroner, as custodian of copies of those records, must follow the same statutory limitations on any further disclosure. 

Here, under the unique facts of this case, application of the Code provisions would prevent disclosure, since there would be no one available to authorize disclosure in accordance with the Code.  The subject of the medical records was deceased, and the mother was excluded by application of statute as aptly discussed by the majority.

For the foregoing reasons, I concur in the judgment to affirm the circuit court.