KENSINGTON'S WINE AUCTIONEERS AND BROKERS, INC., Plaintiff-Appellant and Cross-Appellee, v. JOHN HART FINE WINE, LTD., *et al.*, Defendants-Appellees and Cross-Appellants (Robert A. Eagan and George Pontikes, Appellants and Cross-Appellees).

First District (2nd Division)   Nos. 1—07—1505, 1—07—2209 cons.

Opinion filed May 19, 2009.

George C. Pontikes and Robert A. Egan, both of Chicago, for appellant.

Richard G. Schoenstadt, Michael A. Moses, and Zubin S. Kammula, all of Siegel, Moses & Schoenstadt, P.C., of Chicago, for appellees.

JUSTICE SOUTH delivered the opinion of the court:

Plaintiff Kensington's Wine Auctioneers & Brokers, Inc. (Kensington), appeals from various orders which were entered by the circuit

court in its action seeking injunctive relief under the Uniform Deceptive Trade Practices Act (Deceptive Practices Act) (815 ILCS 510/1 *et seq.* (West 2006)). The undisputed facts reveal the following.

Kensington and John Hart Fine Wine, Ltd. (JHFW), are Illinois corporations which both engage in the business of wine auctioning. In 2005, both companies conducted auctions without auctioneer's licenses, which is a violation of section 10—1 of the Illinois Auction License Act (Auction Act) (225 ILCS 407/10—1 (West 2006)). Accordingly, on October 21, 2005, the Illinois Department of Professional Regulation (Department) sent Kensington a cease-and-desist letter in which it ordered Kensington to stop conducting auctions until it received the necessary license to do so. Kensington complied with the Department's order and ceased its unlicensed auction activities. The Department also investigated JHFW. The Department did not order JHFW to cease its auction activities; rather, it ordered it to comply with the licensing provisions of the Auction Act and JHFW agreed to pay a $7,000 fine. This agreement was embodied in a consent order pursuant to the Auction Act. JHFW and its employees received licenses between July 31, 2006, and August 16, 2006. Shortly thereafter, on August 31, 2006, Kensington received its auction license.

On October 26, 2006, Kensington filed a complaint in the chancery division against JHFW, as well as John Hart, the chairman of JHFW, Paul Hart, the president of JHFW, Michael Davis, chief executive officer of JHFW, Ben Ferdinand, vice-president of JHFW, and Allan Frischman, vice-president and senior specialist for JHFW, seeking injunctive relief pursuant to the Auction Act. In its complaint, Kensington alleged that defendants entered into various consignment agreements when they were unlicensed and planned to sell the wine they obtained from those agreements in upcoming auctions. Kensington alleged that defendants' unlicensed activities violated section 10—1 of the Auction Act (225 ILCS 407/10—1 (West 2006)) and, accordingly, sought to enjoin them "from auctioning wines obtained from consignments, consummated prior to August 16, 2006 at any upcoming wine auction." Kensington also filed an emergency motion for entry of a temporary restraining order, preliminary injunction, and other relief, in which it sought to enjoin a wine auction that JHFW was scheduled to conduct on October 28, 2006.

The next day, defendants responded with a motion to dismiss Kensington's complaint, contending Kensington lacked standing to bring an action under the Auction Act because it only permits the "Commissioner, the Attorney General, the State's Attorney of any county in the State, or any other person [to] maintain an action in the name of the People of the State of Illinois and *** apply for injunctive relief." 225

ILCS 407/20—5(d) (West 2006). Since Kensington initiated the action in its own name, defendants alleged it lacked standing to obtain an injunction under the Auction Act.

On October 27, 2006, the trial court dismissed Kensington's complaint and denied its emergency motion seeking a temporary restraining order, finding it had no standing to obtain the requested relief under the Auction Act and "failed to show the existence of any of the requisite elements for the entry of such relief." The trial court, however, granted Kensington leave to file an amended complaint.

Kensington responded by filing a motion for leave to take discovery and expedite discovery on November 9, 2006. Thereafter, it filed its first amended complaint on November 17, 2006. In its first amended complaint, Kensington alleged that from October 1, 2004, through July 31, 2006, defendants conducted auctions and entered into consignment contracts without an auction license in violation of section 10—1 of the Auction Act (225 ILCS 407/10—1 (West 2006)), and that defendants' unlicensed actions constituted a "deceptive practice" under the Deceptive Practices Act (815 ILCS 510/2 *et seq.* (West 2006)). Accordingly, Kensington sought both preliminary and permanent injunctive relief pursuant to section 3 of the Deceptive Practices Act (815 ILCS 510/3 (West 2006)) in order to prevent defendants from auctioning any wine which was obtained through the unlicensed consignment agreements.

Kensington also filed an emergency motion to "Set Motion for Preliminary Injunction For Hearing" in an attempt to enjoin defendants' next auction scheduled for December 1, 2006. A hearing on the motion was scheduled for November 22, 2006, which was the same date the parties were scheduled to conduct a hearing on Kensington's previously filed discovery motion.

Thereafter, on November 21, 2006, Kensington filed a petition to disqualify Michael Moses and his firm, Siegel, Moses & Schoenstadt, from representing defendants. In the petition, Kensington alleged that Moses established an attorney-client relationship with Steven Puccini, a business consultant to Kensington, prior to representing defendants. Kensington argued that Moses's continued representation of defendants constituted a violation of Rule 1.7 of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 1.7), which prohibits attorneys from laboring under a conflict of interest.

The following day, defendants filed a motion to dismiss Kensington's first amended complaint pursuant to section 2—619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 2006)). In its motion, defendants denied they entered into any consignment contracts while they were unlicensed, the proceeds of which were set

to be sold at upcoming auctions. Defendants also contended that all issues pertaining to any of its unlicensed activities were already resolved by a consent order entered by the Department, and thus the Deceptive Practices Act did not apply. Specifically, they argued that section 4 of the Deceptive Practices Act (815 ILCS 510/4 (West 2006)), which exempts conduct in accordance with an order, rule, or statute administered by a state agency, barred Kensington's lawsuit. Moreover, defendants alleged that even if the Deceptive Practices Act did apply, the alleged misconduct occurred in the past, and accordingly, Kensington was not entitled to injunctive relief under the Deceptive Practices Act because it only allows for such relief if a party can show it will be damaged in the future.

Defendants supported their motion to dismiss with two affidavits. Paul Hart, president of JHFW, completed an affidavit in which he averred that the wine which defendants were planning to sell at the upcoming auction was not the product of agreements that had been entered into while defendants were unlicensed. Specifically, he averred: "my license was issued on July 31, 2006 and is current and valid. Moreover, all agreements between JHFW and consignors for the sale of their wine at the auction to be conducted on December 2, 2006 were entered into by me, on behalf of JHFW, after July 31, 2006." The second affidavit was completed by Mary Anne Benden, the Director of the Department, which oversees the licensing requirements of the Auction Act. In her affidavit, Benden averred that the Department addressed defendants' alleged unlicensed activities, and those allegations were resolved by a consent order as provided for by the Auction Act. Benden confirmed that the Department issued the requisite licenses to defendants, and they were authorized to conduct auctions in the State of Illinois. Moreover, Benden averred she reviewed Kensington's first amended complaint, and it was her opinion that "even if those allegations [were] true, such activities were subsumed in, and fully resolved by, the Consent Order which [the Department] negotiated with said parties and that as a result, therefore, said alleged activities do not present a valid reason for [the Department] to exercise its authority to enjoin future auction activities on the part of defendants."

On November 22, 2006, the date Kensington scheduled a hearing on its discovery and preliminary injunction motions, Kensington failed to appear before the trial court. Accordingly, the trial court struck the emergency motion seeking a preliminary injunction hearing as well as the motion for expedited discovery. Despite its failure to appear at the hearing, Kensington filed a complaint in the law division on that date, contending defendants' unlicensed activities violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS

505/1 *et seq.* (West 2006)). In its complaint, Kensington referenced provisions of the Auction Act as well as the Deceptive Practices Act that served as the bases for its two prior complaints filed in the chancery division.

Kensington subsequently renewed its motions for a preliminary injunction and expedited discovery. However, the trial court determined that defendants' motion to dismiss was potentially dispositive of the litigation and would take precedence over Kensington's motions, including Kensington's motion to disqualify defendants' counsel. Accordingly, the trial court set a briefing schedule and ordered Kensington to file a response to defendants' section 2—619 motion to dismiss. Kensington, however, failed to file its response in accordance with the briefing schedule; rather, it filed a motion for leave to file a second amended complaint. The trial court denied Kensington's motion but granted it additional time to file its response to defendants' motion.

In its response, Kensington disputed defendants' arguments regarding the applicability of the Deceptive Practices Act. In pertinent part, Kensington argued that section 4 of the Deceptive Practices Act did not apply because even though the Department issued defendants a consent order, their conduct failed to comply with the Auction Act. In addition to its response, Kensington filed a Rule 191(b) (145 Ill. 2d R. 191(b)) affidavit completed by its president, Jennifer Laks, in which she indicated she sought to obtain discovery from defendants and take their depositions.

The trial court heard argument on defendants' section 2—619 motion on December 18, 2006, and dismissed Kensington's first amended complaint with prejudice. In a written order, the court made the following findings: "as a matter of law, plaintiff has no ascertainable right to relief under the Uniform Deceptive Trade Practices Act"; "plaintiff has not met any of the standards for the entry of a preliminary or permanent injunctive relief"; and "plaintiff was not a competitor of the defendants during the time period alleged in the amended complaint during which defendants did not possess an Illinois Auctioneer's License."

On January 26, 2007, defendants filed a petition for attorney fees and costs, seeking a court order requiring Kensington to pay their attorney fees and costs as a sanction for violating Supreme Court Rule 137 (134 Ill. 2d R. 137). In their motion, defendants cited a number of occasions of improper behavior on behalf of Kensington and its attorneys to support their contention that they were entitled to fees, including: Kensington's failure to conduct adequate prefiling research to support its claims raised under the Auction Act and the Deceptive Practices Act; Kensington's failure to appear before the trial court on

November 22, 2006; and Kensington's misuse of judicial authority. Defendants filed a supplemental petition on February 20, 2007, seeking attorney fees and costs amounting to $95,386.60.

Following a hearing conducted on May 14, 2007, the trial court granted in part and denied in part defendants' petition for attorney fees and costs. The trial court found that although it disagreed with the legal theories advanced by Kensington and its attorneys, it did not find their conduct sanctionable; however, the court found that Kensington and its attorneys should be required to reimburse defendants for the fees and costs incurred as a result of their failure to appear at the November 22, 2006, hearing. Accordingly, the trial court entered judgment against Kensington and its counsel, George Pontikes and Robert Egan, jointly and severally, in the amount of $20,172.50. Kensington filed a timely notice of appeal, and defendants filed a timely notice of cross-appeal.

Following the dismissal of Kensington's chancery division complaint, defendants filed a motion to dismiss Kensington's law division complaint, contending, in pertinent part, that the doctrine of *res judicata* barred Kensington's claim. Specifically, defendants alleged that the order entered in the chancery division served to bar Kensington's law division action.

Kensington filed a response conceding that the decision in the chancery division was *res judicata* as to the complaint it filed in the law division if the chancery court's decision was affirmed on appeal. However, Kensington requested the trial court to stay the proceedings in the law division pending the appeal of the chancery action.

On June 12, 2007, the trial court denied Kensington's motion to stay the proceedings and dismissed the complaint filed in the law division, finding the chancery court's decision *res judicata*. Kensington filed a timely notice of appeal contesting the law division's order.

This court subsequently consolidated the appeals filed in Kensington's chancery and law division actions.

On appeal, Kensington raises the following issues for our consideration: (1) whether the trial court erred when it dismissed Kensington's first amended complaint with prejudice; (2) whether the trial court erred in dismissing Kensington's first amended complaint when it had filed a Rule 191(b) affidavit requesting additional discovery; (3) whether the trial court erred in failing to consider Kensington's petition to disqualify counsel; (4) whether the trial court erred in denying Kensington's motion to file a second amended complaint; (5) whether the trial court erred in imposing Supreme Court Rule 137 sanctions on Kensington; and (6) whether the trial court erred in refusing to stay Kensington's law division action pending the appeal of the dismissal of its chancery division action.

On cross-appeal, defendants raise the following issue for our consideration: whether the trial court erred in failing to grant defendants' motion for Rule 137 sanctions in its entirety. We will first address the arguments raised by Kensington on direct appeal before turning to the argument raised by defendants on cross-appeal.

Kensington first contends the trial court erred in granting defendants' section 2—619 motion to dismiss its first amended complaint with prejudice. Specifically, Kensington asserts that the trial court erred in finding that it was not entitled to relief under the Deceptive Practices Act because it was an unlicensed competitor during the time it alleged defendants engaged in deceptive business practices, and defendants' conduct was exempt under section 4 of the Deceptive Practices Act.

A motion filed pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 2006)) admits as true all well-pleaded facts and all reasonable inferences that can be gleaned therefrom but asserts that some affirmative matter or defect defeats the plaintiff's claim. *Wackrow v. Niemi*, 231 Ill. 2d 418, 422 (2008); *Anderson v. Beach*, 386 Ill. App. 3d 246, 248 (2008). A trial court's ruling on a section 2—619 motion to dismiss is subject to *de novo* review. *Wackrow*, 231 Ill. 2d at 422; *Anderson*, 386 Ill. App. 3d at 248.

■ Illinois enacted the Deceptive Practices Act in 1965 to define and prohibit deceptive trade practices and unfair competition. *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 234 (2005); *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 865 (2008). It provides both consumers and business competitors with a means to address and remedy a company's deceptive trade practices. See *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 860 (1995). Although the Deceptive Practices Act does not permit a party to recover monetary damages, it does allow an injured party to obtain "injunctive relief upon terms that the court considers reasonable." 815 ILCS 510/3 (West 2006); *Chicago's Pizza*, 384 Ill. App. 3d at 866. To be eligible for injunctive relief under the Deceptive Practices Act, a plaintiff must show that the defendant's conduct will likely cause it to suffer damages in the future. *Tarin v. Pellonari*, 253 Ill. App. 3d 542, 553 (1993).

■ Section 2 of the Deceptive Practices Act lists conduct that is considered "deceptive." 815 ILCS 510/2 (West 2006). In pertinent part it provides:

> "A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:
> ***

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

\*\*\*

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

\* \* \*

(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(2), (a)(3), (a)(5), (a)(12) (West 2006).

Kensington first contends the trial court erred in finding it was not entitled to relief under the Deceptive Practices Act because it was not a licensed competitor at the time it alleged that defendants purportedly engaged in conduct that constituted a deceptive business practice under sections 2(a)(2), (a)(3), (a)(5) and (a)(12) of the Deceptive Practices Act (815 ILCS 510/2(a)(2), (a)(3), (a)(5), (a)(12) (West 2006)).

■ It is undisputed that the Deceptive Practices Act provides standing to business competitors to file suit and enjoin the deceptive business practices of a rival company. *Smith*, 276 Ill. App. 3d at 860. At the time Kensington filed its lawsuit, it had obtained a valid auctioneer's license in conformance with the Auction Act. Defendants also possessed the appropriate licenses. However, Kensington did not possess a valid license during the time period it alleges defendants' engaged in deceptive business practices. Moreover, Kensington was ordered to cease all auction activity during the time period alleged in its complaint. Kensington cites to no relevant authority that its current status as a licensed competitor of defendants gives it standing under the Deceptive Practices Act to object to defendants' prior business practices when it did not possess a valid license and was ordered by the Department to cease all auction activity. A party's failure to offer relevant legal authority in support of its argument results in waiver of that argument on appeal. 210 Ill. 2d R. 341(h)(7).

■ Kensington next contends the trial court erred in finding that defendants' conduct was exempt pursuant to section 4(1) of the Deceptive Practices Act (815 ILCS 510/4(1) (West 2006)). Specifically, Kensington contends that defendants' conduct failed to accord with the licensing requirements of the Auction Act, and thus the Department's

consent order does not serve to bar its action under the Deceptive Practices Act.

Section 4(1) of the Deceptive Practices Act provides: "This Act does not apply to: (1) conduct in compliance with the orders or rules of or a statute administered by a Federal, state or local governmental agency." 815 ILCS 510/4(1) (West 2006). Accordingly, a party who acts in accordance with a consent order administered by a government agency cannot be subject to liability under the Deceptive Practices Act. See, *e.g.*, *Price*, 219 Ill. 2d at 273 (cigarette manufacturer could not be subject to liability under the Deceptive Practices Act because its conduct was in compliance with consent orders entered by the Federal Trade Commission).

Here, although defendants did not possess the necessary licenses which were required by the Auction Act, they abided by the terms of the consent order entered by the Department, which is charged with overseeing and administering the Auction Act. Section 4(1) of the Deceptive Practices Act exempts conduct in compliance "with the *orders or* rules of *or* a statute administered by a *** state *** agency." (Emphasis added.) 815 ILCS 510/4(1) (West 2006). Since defendants' conduct was in compliance with the Department's order, the trial court did not err in finding that section 4(1) served to bar Kensington's claim under the Deceptive Practices Act. Moreover, because section 4(1) bars Kensington's claim, the trial court did not err in dismissing its complaint. See, *e.g.*, *Price*, 219 Ill. 2d at 273.

Kensington next contends that the trial court erred in ruling on defendants' motion to dismiss because it had filed a Supreme Court Rule 191(b) (145 Ill. 2d R. 191(b)) affidavit requesting discovery. A trial court is afforded considerable discretion in ruling on matters pertaining to discovery, and thus its rulings on discovery matters will not be reversed absent an abuse of that discretion. *Wisniewski v. Kownacki*, 221 Ill. 2d 453, 457 (2006); *Crichton v. Golden Rule Insurance Co.*, 358 Ill. App. 3d 1137, 1150 (2005). Supreme Court Rule 191(b) (145 Ill. 2d R. 191(b)) sets forth the procedure to be followed when a party believes that additional discovery is needed to properly respond to a section 2—619 motion to dismiss. *Kane v. Motorola, Inc.*, 335 Ill. App. 3d 214, 224 (2002).

Specifically, Rule 191(b) provides:

"If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant [has been] unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his

belief, the court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing papers or documents in the possession of those persons or furnishing sworn copies thereof." 145 Ill. 2d R. 191(b).

The trial court does not abuse its discretion or err in granting a defendant's motion to dismiss when a plaintiff's Rule 191(b) affidavit is facially defective and fails to contain the necessary disclosures required by the rule. See, *e.g.*, *Giannoble v. P&M Heating & Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 1064-65 (1992) (trial court did not err in granting the defendant's motion for summary judgment when the plaintiff's Rule 191(b) affidavit was defective because the affiant failed to specifically state what he believed a potential witness would testify to and the reasons for the affiant's belief); see also *Crichton*, 358 Ill. App. 3d at 1151-52; *Wynne v. Loyola University of Chicago*, 318 Ill. App. 3d 443, 456 (2000).

■ Here, Kensington filed a Rule 191(b) affidavit completed by Jennifer Laks, its president. In her affidavit, she averred that it is common practice in the wine brokerage industry to acquire large consignments of wine prior to conducting an auction. She further averred that she submitted her affidavit in accordance with Rule 191(b) "in order to obtain discovery from defendants including the production of documents wherein wines were consigned between October 21, 2005 and July 31, 2006 and to take the depositions of defendants John Hart, Paul Hart, Michael Davis, Ben Ferdinand and Allan Frischman to verify this information." Laks' affidavit is thus facially defective because it fails to allege what she believes each of the defendants might testify to, as well as the reasons for her beliefs. Accordingly, the trial court did not err in granting defendants' motion to dismiss despite the presence of Laks' Rule 191(b) affidavit. *Crichton*, 358 Ill. App. 3d at 1151-52; *Wynne*, 318 Ill. App. 3d at 456; *Giannoble*, 233 Ill. App. 3d at 1064-65.

■ Kensington next contends that the trial court erred in refusing to hear its motion to disqualify defendants' counsel. Specifically, Kensington alleges that prior to representing defendants, Michael Moses commenced an attorney-client relationship with Steven Puccini, a business consultant to Kensington, and that Moses' subsequent representation of defendants constituted a conflict of interest.

Courts have interests in " 'protecting the attorney-client relationship, maintaining public confidence in the legal profession and ensuring the integrity of judicial proceedings' " and have the authority to disqualify an attorney from representing a particular client to protect

those interests. *In re Estate of Klehm*, 363 Ill. App. 3d 373, 376-77 (2006), quoting *SK Handtool Corp. v. Dresser Industries, Inc.*, 246 Ill. App. 3d 979, 989 (1993). However, because attorney disqualification is a "drastic measure," which bars a party from retaining and being represented by the counsel of its choice, courts must exercise caution in reviewing a motion to disqualify counsel to ensure that the motion is not being used as a tool by one party to harass the other party. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 178 (1997); *Pedersen & Houpt, P.C. v. Summit Real Estate Group, LLC*, 376 Ill. App. 3d 681, 685 (2007). A trial court's ruling on a motion to disqualify counsel will not be reversed absent an abuse of discretion. *Klehm*, 363 Ill. App. 3d at 380.

Illinois Supreme Court Rule of Professional Conduct 1.7(b), the rule cited in Kensington's motion to disqualify, prohibits an attorney from engaging in an attorney-client relationship when a potential conflict of interest exists. 134 Ill. 2d R. 1.7(b). Specifically, it provides: "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests." 134 Ill. 2d R. 1.7(b). A party seeking to disqualify counsel bears the burden of proving the existence of a conflict of interest. *In re Possession & Control of the Commissioner of Banks & Real Estate of Independent Trust Corp.*, 327 Ill. App. 3d 441, 478 (2001). Accordingly, a party seeking disqualification of an attorney because of a conflict of interest resulting from the attorney's representation of a former client bears the burden of proving the existence of the former attorney-client relationship. See *Schwartz*, 177 Ill. 2d at 174; *Gagliardo v. Caffrey*, 344 Ill. App. 3d 219, 226 (2003). An attorney-client relationship arises only when both the attorney and the client consent to its formation. *Wildey v. Paulsen*, 385 Ill. App. 3d 305, 311 (2008); *Simon v. Wilson*, 291 Ill. App. 3d 495, 509 (1997). Thus, the client must explicitly authorize the attorney to work on his behalf and the attorney must indicate an acceptance of that authority to work on the client's behalf in order to establish an attorney-client relationship. *Wildey*, 385 Ill. App. 3d at 311; *Simon*, 291 Ill. App. 3d at 509.

Here, the trial court found that defendants' motion to dismiss could dispose of the case in its entirety and chose to consider that motion first before considering Kensington's motion to disqualify counsel. Because the trial court granted defendants' section 2—619 motion, it never ruled on the merit of Kensington's motion to disqualify. Nevertheless, Kensington was not harmed by the trial court's failure to rule, as Puccini's affidavit fails to show that he and Moses established an attorney-client relationship and that Moses labored under a conflict of interest.

14

In his affidavit, Puccini merely averred that he had a 25-minute phone conversation with Moses after the Department filed a complaint against him in October 2005, with respect to the Auction Act's licensing requirements. During that conversation, Puccini and Moses discussed the specifics of the complaint "as well as specifics about Hart Davis Hart, a competitor whose license criteria matched the allegations" in his own complaint and discussed a strategy for addressing the complaint and Hart Davis Hart. At the conclusion of their conversation, Puccini asked Moses if there would be any conflict of interest arising from Moses's representation, and Moses stated he would "check." However, Puccini averred that Moses "never contacted [him] again." Puccini left Moses several messages to see if he could retain Moses's services, but "[n]o return call was forthcoming." Puccini's affidavit thus fails to show that Moses ever consented to the formation of an attorney-client relationship; rather, it definitively shows that Moses never accepted the authority to represent Puccini and work on his behalf. Accordingly, we find Kensington's argument meritless.

■ Kensington next contends the trial court erred in denying it the opportunity to file a second amended complaint. Specifically, Kensington argues that the trial court abused its discretion because the second amended complaint would have cured any defects in its prior pleadings.

Initially, we note that although Kensington's motion for leave to file a second amended complaint is contained in the record on appeal, the amended complaint that Kensington sought to file is not. Instead, Kensington affixed an unofficial copy of its verified second amended complaint to the appendix of its appellate brief. An appellate court may not consider documents that are not part of the certified record on appeal. *Cannon v. William Chevrolet/GEO, Inc.*, 341 Ill. App. 3d 674, 680 (2003); *Anderson v. Village of Forest Park*, 238 Ill. App. 3d 83, 90 (1992). Attachments to appellate briefs that are not contained in the certified record on appeal cannot be used to supplement the record and are not properly before a reviewing court. *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 446 (2007); *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1024 (2003). Accordingly, we cannot consider Kensington's second amended complaint. Inasmuch as Kensington failed to meet its burden of providing a sufficiently complete record to allow for review of its claim, we do not find the trial court erred in denying its motion for leave to file its second amended complaint for injunctive relief. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984); *Anderson*, 238 Ill. App. 3d at 90.

■ Kensington next asserts the trial court erred in imposing attorney fee sanctions pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). Specifically, Kensington contends the trial court imposed the sanction as a result of its failure to appear in court and that Rule 137 does not authorize the imposition of sanctions for a party's failure to appear.

The purpose of Rule 137 (155 Ill. 2d R. 137) is to prevent the filing of false and frivolous lawsuits. *Sanchez v. City of Chicago*, 352 Ill. App. 3d 1015, 1020 (2004). To fulfill its purpose, Rule 137 requires every pleading submitted by a party represented by an attorney to be signed by that attorney, the signature constituting a certification that the attorney has read the pleading and that to his knowledge, the pleading is well grounded in fact and is warranted by law. 155 Ill. 2d R. 137; *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 486-87 (1998). Rule 137 permits a trial court to impose an "appropriate sanction," including an award of reasonable attorney fees to the opposing party, on a party who violates the rule. 155 Ill. 2d R. 137; *Baker v. Daniel S. Berger, Ltd.*, 323 Ill. App. 3d 956, 962 (2001). Rule 137 applies to pleadings and, accordingly, it does not authorize sanctions for all violations of court rules and acts of misconduct. *Krautsack v. Anderson*, 223 Ill. 2d 541, 562 (2006); *In re Marriage of Olesky*, 337 Ill. App. 3d 946, 949 (2003); *In re C.K.*, 214 Ill. App. 3d 297, 300 (1991). A party requesting the trial court to impose Rule 137 sanctions must prove to the trial court that the opposing party made false allegations without reasonable cause. *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217 (2007). Because Rule 137 is penal in nature, it must be strictly construed. *Whitmer v. Munson*, 335 Ill. App. 3d 501, 514 (2002). The trial court's decision to impose sanctions pursuant to Rule 137 is a matter of discretion and will not be overturned absent an abuse of that discretion. *Dowd*, 181 Ill. 2d at 487; *Dismuke*, 378 Ill. App. 3d at 217. In reviewing a Rule 137 sanction award, " 'the primary consideration is whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts.' " *Whitmer*, 335 Ill. App. 3d at 514, quoting *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 244 (2000).

Here, defendants' motion for sanctions cited eight instances of Kensington's alleged sanctionable conduct including: (1) initiating legal action under the Auction Act when it was clear Kensington had no legal standing to do so; (2) seeking relief under the Deceptive Practices Act, which was not applicable to its claim; (3) filing emergency motions when no true emergencies existed; (4) failing to appear in court for a hearing on November 22, 2006, on its motion to

set a hearing date for a preliminary injunction; (5) seeking to file a second amended complaint in lieu of a response to defendants' motion to dismiss in violation of the court's briefing schedule; (6) failing to advise the court and defendants that it had filed a second action against defendants in the law division; (7) misciting judicial authority; and (8) attempting to harass defendants by posting their pictures in Kensington's retail store.

Following a hearing on defendants' motion, the trial court found that defendants were entitled to fees as a result of Kensington's failure to appear at the November 22, 2006, hearing on its emergency motion to set a hearing date for a preliminary injunction, explaining, "I do believe that the Defendants are entitled to their fees and their costs for preparing for the emergency motion that you filed and failed to appear on and failed to give them notice that you would not appear. I'm going to give them fees for the preparation, the time, and the activity they spent in preparing for that hearing and the amount of time that they had to stay in this Court waiting for someone to appear on that date." However, the trial court denied defendants' request for additional Rule 137 attorney fees, explaining: "I am not willing to grant Section 137 fees on the rest of the case because, even though I thoroughly disagree with their legal theory, I do not believe that it was posited for the purposes of harassment."

Accordingly, the trial court cited Kensington's failure to appear as the only basis for Rule 137 sanctions. Notably, it did not find that any of the pleadings filed by Kensington were done without first making a sufficient inquiry into the relevant facts and law or that they were filed as a means of harassment. Rule 137, however, must be strictly construed (*Whitmer*, 335 Ill. App. 3d at 514) and does not authorize sanctions simply for a party's failure to appear. Indeed, "[b]ecause Rule 137 addresses the pleadings, motions and other papers a litigant files, the rule does not provide a sanction against all asserted instances of bad faith conduct by a litigant or the litigant's attorney during the course of litigation." *Krautsack*, 223 Ill. 2d at 562. Because the conduct the trial court sanctioned was not encompassed by Rule 137, we find it did abuse its discretion by imposing Rule 137 sanctions based solely upon Kensington's failure to appear. Accordingly, we reverse the trial court's order imposing Rule 137 sanctions on Kensington based on its failure to appear.

Finally, Kensington contends the trial court erred in granting defendants' motion to dismiss its law division action on *res judicata* grounds and alleges that the trial court should have granted its motion to stay its law division action pending the appeal of the dismissal of its chancery division action.

*Res judicata* is an equitable doctrine that promotes judicial economy by preventing multiple lawsuits between the same parties that involve the same facts and issues. *Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887, 890 (2009). Pursuant to that doctrine, a final judgment on the merits by a court of competent jurisdiction bars all subsequent litigation between the parties regarding the same issues as well as issues that could have been decided in the first action. *Piagentini*, 387 Ill. App. 3d at 890; *In re Estate of Barth*, 339 Ill. App. 3d 651, 667 (2003). Accordingly, a final judgment can serve as the basis to apply the doctrine of *res judicata* even though that judgment is being appealed. *Illinois Founders Insurance Co. v. Guidish*, 248 Ill. App. 3d 116, 120 (1993). However, when a party appeals the judgment in one case, it is possible that conflicting judgments can result by allowing the judgment in the first case to serve as the basis for *res judicata* in the second case because the judgment in the first case could be reversed on appeal. *Barth*, 339 Ill. App. 3d at 668; *Illinois Founders Insurance Co.*, 248 Ill. App. 3d at 120-21. To avoid such a result, Illinois courts have recognized that it is appropriate to delay a decision in the second case pending the appeal of the first case. *Barth*, 339 Ill. App. 3d at 668; *Illinois Founders Insurance Co.*, 248 Ill. App. 3d at 121; *Wiseman v. Law Research Service, Inc.*, 133 Ill. App. 3d 790, 793 (1971).

Here, Kensington acknowledges that the action it filed in the law division contains the same claims asserted in its chancery division complaint, and the doctrine of *res judicata* would serve to bar its law division action if this court affirmed the dismissal of its chancery division complaint. Although we find the trial court erred in failing to stay the law division proceeding pending the appeal of the dismissal of Kensington's chancery division action (*Barth*, 339 Ill. App. 3d at 668; *Illinois Founders Insurance Co.*, 248 Ill. App. 3d at 121), our decision affirming the dismissal of Kensington's chancery division complaint renders moot Kensington's motion to stay its law division action.

We now turn to the argument raised by defendants on cross-appeal. On cross-appeal, defendants contend the trial court erred in failing to grant their motion for Rule 137 sanctions in its entirety because Kensington engaged in numerous instances of sanctionable conduct. Moreover, defendants allege the trial court failed to employ an objective standard in reviewing their motion.

As set forth above, Rule 137 applies to pleadings (*Krautsack*, 223 Ill. 2d at 562; *In re Marriage of Olesky*, 337 Ill. App. 3d at 949; *In re C.K.*, 214 Ill. App. 3d at 300), and it is the burden of the party requesting Rule 137 sanctions to show that the opposing party made statements he knew or should have known to be false and that the state-

ments were made without reasonable cause. *Miner v. Fashion Enterprises, Inc.*, 342 Ill. App. 3d 405, 422 (2003); *Carus Chemical Co. v. Calciquest*, 341 Ill. App. 3d 897, 901 (2003). In reviewing a motion for sanctions, the trial court must employ an objective standard and determine what was reasonable at the time the party filed its pleading. *Baker v. Daniel S. Berger, Ltd.*, 323 Ill. App. 3d 956, 963 (2001). " 'It is not sufficient that an attorney "honestly believed" his or her case was well grounded in fact or law.' " *Baker*, 323 Ill. App. 3d at 963, quoting *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074-75 (1995).

Initially, we note that some of the bases that defendants cited in support of their motion for Rule 137 sanctions did not fall within the scope of the rule, which only applies to pleadings. *Krautsack*, 223 Ill. 2d at 562; *In re Marriage of Olesky*, 337 Ill. App. 3d at 949; *In re C.K.*, 214 Ill. App. 3d at 300. Specifically, defendants' motion cited Kensington's failure to appear, Kensington's failure to advise the trial court that it filed a complaint in the law division, Kensington's disregard for the trial court's briefing schedule on defendants' motion to dismiss, and Kensington's posting of defendants' pictures in its store, as some of the reasons they sought Rule 137 sanctions. This conduct is not sanctionable under Rule 137. Defendants did, however, allege that the two complaints filed by Kensington were made without engaging in reasonable inquiry into the applicability of the Auction Act and the Deceptive Practices Act. Because these allegations pertain to the pleadings, and not simply Kensington's conduct, they could form the basis for Rule 137 sanctions. 155 Ill. 2d R. 137; *Krautsack*, 223 Ill. 2d at 562. Accordingly, we will consider defendants' allegation that the trial court failed to employ an objective standard with respect to those specific allegations.

Defendants' contention that the trial court employed the incorrect standard is based on the following statement made by the trial court during the hearing on defendants' motion for sanctions: "I do believe, after hearing [Kensington's] arguments today and reading their papers, that they believe, and they still believe as they stand here today that there's some common law right to attack this particular procedure, even though that 137 isn't reasonable belief, it is difficult for me to make that distinction because it's a different theory of law that they're arguing and I don't find any relevance for it." Although the trial court referenced Kensington's subjective belief, it also indicated that it understood Kensington's legal theory but simply disagreed with it and was thus unwilling to impose Rule 137 sanctions. Accordingly, the trial court did not apply the wrong standard in evaluating defendants' motion for sanctions or abuse its discretion in denying defendants' motion for Rule 137 sanctions.

For the aforementioned reasons, we reverse the trial court's order granting defendants' motion for Rule 137 sanctions based solely upon Kensington's failure to appear at a scheduled hearing, and affirm all other orders which were entered by the trial court.

Affirmed in part; reversed in part.

KARNEZIS, P.J., and HOFFMAN, J., concur.