2022 IL App (2d) 210121-U
No. 2-21-0121
Order filed January 28, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF EMILY PROCCICHIANI, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Petitioner and Counterrespondent, | ) ) | |
| and | ) ) | No. 19-DV-333 |
| SERGIO PROCCICHIANI, | ) ) ) | |
| Respondent and Counterpetitioner-Appellant, | ) ) | |
| (Thomas A. Vaclavek, Guardian *ad litem*, Petitioner-Appellee). | ) ) ) | Honorable Justin M. Hansen, Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices McLaren and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm, concluding the trial court did not abuse its discretion by denying respondent's motion to substitute the guardian *ad litem* and awarding the GAL fees.

¶ 2    Respondent, Sergio Proccichiani, *pro se*, appeals from the trial court's orders (1) denying his motion to substitute the guardian *ad litem* (GAL), and (2) granting the GAL's final fee petition. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                    A. Prejudgment Proceedings and Sergio's Prior Appeal

¶ 5     Petitioner, Emily Proccichiani, and Sergio married in 2003 and had two children, A.P. (born in 2004) and M.P. (born in 2009). On April 17, 2019, Emily petitioned the circuit court for an order of protection (McHenry County case No. 19-OP-251). At the time, the parties and both minors resided together. The circuit court granted the petition and entered an emergency order of protection, which, among other things, granted to Emily sole physical custody of the minors, restricted all contact between Sergio and Emily and Sergio and the minors, and reserved determination of Sergio's visitation rights.

¶ 6     On April 22, 2019, Emily petitioned to dissolve the parties' marriage, and, the next day, Sergio counterpetitioned to do so. On April 30, 2019, the court consolidated the dissolution and order-of-protection proceedings and, on the parties' separate requests, appointed the GAL. The GAL was directed to investigate and prepare a report regarding the issues of parenting time, residential placement, and decision making authority.

¶ 7     On May 8, 2019, the court entered an interim order of protection. On June 5, 2019, the parties agreed to modify the order to allow Sergio to engage in joint therapy with M.P. Over the next few months, the court extended the order of protection, as modified, from time to time.

¶ 8     On October 30, 2019, the court set the matter for trial, beginning on February 10, 2020. Before trial, however, the parties settled all parenting issues. Thus, on February 10, 2020, the court entered a final parenting plan and allocation judgment (hereinafter, the agreed parenting judgment), which memorialized the settlement. In relevant part, the agreed parenting judgment stated the GAL "conducted an extensive investigation in this matter and made recommendations to the Court and the parties." As to A.P., Emily was awarded all parenting time, and the issue of Sergio's visitation was reserved. The order also required the parties to "attempt family

reunification therapy *** with the goal of reunifying Sergio and A.P.," and gave the therapist discretion to determine if and when joint sessions were appropriate. As to M.P., the court granted Sergio unsupervised parenting time that gradually increased in two-week intervals.

¶ 9     A separate agreed order stated that the GAL was excused from appearing at all future trial dates and that his role going forward would be "limited to [only] communication and consultation with [the family reunification therapist]." Additionally, the court entered a plenary order of protection, which protected Emily and A.P. from Sergio, except as set forth in the agreed parenting judgment.

¶ 10    At trial, the parties stipulated that the GAL's outstanding fees, as reflected in his final invoice dated February 8, 2020, which at that time totaled $17,773.10, were fair and reasonable.

¶ 11    On June 11, 2020, the court entered a judgment for dissolution of marriage, which, among other things, allocated to Sergio the entirety of the GAL's outstanding prejudgment fees and provided that those fees were to be paid directly from the proceeds of the sale of the parties' second residence. Sergio unsuccessfully moved to reconsider the judgment. He appealed but later voluntarily dismissed it pursuant to the terms of a settlement agreement that resolved several postjudgment matters. *In re Marriage of Proccichiani*, No. 2-20-0644 (Feb. 11, 2021) (minute order).

¶ 12       B. Postjudgment Proceedings and Sergio's Petition for Order of Protection

¶ 13    After the proofs were closed (but before judgment was entered), on May 20, 2020, Sergio petitioned the circuit court, in a separate proceeding (McHenry County case No. 20-OP-272), for an order of protection. Sergio alleged that Emily and A.P. physically abused M.P. and that Emily had been charged with domestic violence in relation to that abuse (McHenry County case No. 20-CM-580). That same day, the circuit court entered an emergency order of protection against Emily,

prohibiting her from having any contact with Sergio and M.P.

¶ 14    On May 26, 2020, Emily moved to reappoint the GAL. She alleged that, after unsupervised visits between Sergio and M.P. began, M.P. became increasingly defiant and hostile, had been taunting and teasing A.P., and had made statements that he no longer wanted to live with Emily, none of which occurred when Sergio did not have unsupervised parenting time with M.P. She also alleged Sergio made statements to the family reunification therapist, which, when communicated to A.P. by the therapist, made A.P. "incredibly uncomfortable and left her feeling as though her therapist did not trust her." Emily further alleged Sergio had given M.P. a secret cell phone to which Sergio sent text messages, instructing M.P. to photograph Emily and her medications and ask questions of Emily, which violated the plenary order of protection against him.

¶ 15    On May 29, 2020, Emily petitioned to modify the agreed parenting judgment. She sought to terminate family reunification therapy between A.P and Sergio and to terminate Emily's responsibility to keep Sergio apprised of A.P.'s health and wellness.

¶ 16    On June 1, 2020, the court "reappointed"[1] the GAL and directed him to investigate on "an expeditious basis" Sergio's petition for an order of protection. The court also ordered the parties to pay the GAL a $3000 retainer, with each party responsible for half, subject to reallocation.

¶ 17    On June 15, 2020, the court held a hearing on Sergio's petition for order of protection. At the hearing, the GAL testified he had spoken with the children, Emily, Emily's brother, and Sergio, and he summarized those conversations for the court. On June 18, 2020, the court entered an order

---

[1] We place quotation marks around "reappointed" because the GAL was not fully discharged after entry of the agreed parenting judgment. Rather, as noted, he remained appointed for a limited purpose.

that provided M.P. was to reside with Sergio and have no contact with Emily until further order of the court. The court also directed the GAL to conduct a best-interests investigation as to the pending petitions, entered and continued Sergio's petition for order of protection, and allowed the emergency order of protection against Emily to expire by its own terms.

¶ 18    On September 1, 2020, the GAL filed a quarterly statement of his services as required by statute (see 750 ILCS 5/506(b) (West 2020)) and local rule (see 22d Judicial Cir. Ct. R. 11.04(f)). The statement stated that the current outstanding fees totaled $14,197.30, a portion of which were prejudgment fees that had not yet been paid by Sergio. The GAL attached to the statement invoices dated June 30 and August 26, 2020, which listed the services performed and fees earned. Those invoices also showed the GAL had received payments totaling $14,000 from Emily, which were applied to several outstanding prejudgment invoices (that, per the dissolution judgment, were Sergio's obligation to pay).

¶ 19    On September 22, 2020, the GAL petitioned for interim and prospective fees. In total, the GAL sought $21,000, which consisted of $3773.10 in prejudgment fees, $12,149.20 in postjudgment fees, and $5077.70 in prospective fees. The GAL noted Emily had paid $14,000 toward the prejudgment fees that were allocated to Sergio in the dissolution judgment. The GAL asserted he was presently acting as an "intermediary" between the parties due to the orders of protection and was receiving several emails per week and, sometimes, several per day. He alleged that he had performed all obligations required of his appointment and the services performed were reasonable and necessary.

¶ 20    On November 9, 2020, Sergio *pro se* moved to substitute the GAL. (By this time, Sergio's attorney had withdrawn.) He contended, notwithstanding his stipulation to the contrary, that the prejudgment fees incurred by the GAL were excessive and unreasonable in light of the work

performed and the financial circumstances of the parties. He asserted the GAL had not provided consistent billing statements but, rather, filed periodic fee petitions that were not supported by consistent billing statements. He also took issue with the GAL's purported failures to adequately investigate, negotiate, and provide information to him. He noted that, in the six months since the GAL was reappointed, the GAL had invoiced approximately $12,000, which was nearly half of what the GAL invoiced before judgment. He asserted the GAL had done nothing to facilitate the reunification of Sergio and A.P. or Emily and M.P. and that M.P. no longer trusted the GAL. He requested the court discharge the GAL and appoint "some other [GAL] Pro Bono."

¶ 21    On November 19, 2020, Sergio applied for a fee waiver. See 735 ILCS 5/5-105 (West 2020); Ill. S. Ct. R. 298 (eff. July 1, 2019). The court granted his application the same day.

¶ 22    On November 23, 2020, Sergio presented his petition to substitute the GAL. Emily opposed it. She noted the case was complex and that the GAL had been "very involved with the investigation" and had numerous communications with the parties and the children. She contended that a new GAL would need "a long time to get up to speed," which would delay the matter even further. Additionally, Emily asserted the GAL's involvement in the case had been valuable to both the parties and the children.

¶ 23    Sergio reiterated his arguments concerning the GAL's failure to reunify A.P. and Sergio and the parties' respective financial circumstances and otherwise stood on his written motion.

¶ 24    The court denied the motion. In doing so, it noted the GAL was "instrumental" in reaching the agreed parenting judgment. The court also noted the case was complex, observing there were orders of protection that protected Emily and A.P. from Sergio and Sergio and M.P. from Emily, which required the GAL to act as an intermediary between the parties. Further, the court reasoned, to substitute the GAL would only cause further delay and "would not do service to either of the

two children or the Court or the parties." Finally, the court noted that any dispute with the specific line items in the GAL's invoices could be litigated in the context of the GAL's fee petition. The court set the GAL's fee petition for hearing on December 18, 2020.

¶ 25    In the meantime, on December 4, 2020, the GAL filed a second quarterly statement of services and attached invoices dated October 15 and November 19, 2020, which detailed the services performed and fees earned. The GAL also filed a second interim and prospective fee petition, which sought $9822.30 in earned fees and $3000 in prospective fees. The second petition was scheduled for presentment on December 18, 2020.

¶ 26    The record does not contain a report of proceedings or an acceptable substitute for the December 18, 2020, hearing. The order entered after the hearing set the GAL's fee petition for hearing on January 6, 2021. (The order does not specify which fee petition would be heard that date.) The order also states the GAL "delivered a detailed Oral Report in open Court."

¶ 27    The record likewise does not contain a report of proceedings or acceptable substitute from the January 6, 2021, hearing. However, the order entered after the hearing states "[t]he GAL's fee petition [was] granted, the parties and the Court *agreeing that the fees incurred* [*were*] *reasonable and necessary*." It is not clear whether the order granted the GAL's first fee petition, second fee petition, or both. The order directed the parties "to review the proper application of the $17,773.10 payment towards GAL fees resulting from the sale of the [parties' second residence] and the [dissolution judgment]." In addition, the court's order provided that, pursuant to Sergio's fee waiver, Sergio's share of the GAL fees incurred after November 19, 2020, were waived.

¶ 28    The parties thereafter settled all pending postjudgment matters, and, on January 15, 2021, the court entered an order memorializing the settlement. The court also discharged the GAL.

¶ 29    On January 27, 2021, the parties appeared before the court on Sergio's former attorney's

fee petition. The record does not contain a report of the proceedings, but the court's order states the matter was continued to February 11, 2021, for status on the attorney's fee petition and "GAL fees." At that status hearing, the court explained the procedural posture of the GAL's fee petition, noting it had "set it over from a prior date for an updated accounting just to show where prior proceeds were received by [the GAL's] office and then applied to which side of the ledger." The court noted it had received an accounting that complied with its order and asked the GAL whether there was anything else he wanted to submit. The GAL responded that he had submitted a letter that explained the history and application of payments that had been made toward his fees. The court stated it had received the letter. The court then asked Sergio whether he had received the materials from the GAL. Sergio stated he received and reviewed the materials. The court then asked Sergio whether he agreed with the amount—$7387.10—the GAL claimed was due from Sergio. Sergio stated, "I disagree with the whole process, billing statement process." The court noted Sergio's objection to "the billing process" and set the matter for hearing on February 18, 2021.

¶ 30    On February 18, 2021, the court held an evidentiary hearing on the GAL's final fee petition. The court admitted into evidence the GAL's fee petition, the GAL's invoices that he had previously provided to both parties and the court, and an "accounting that was provided pursuant to request by [Sergio], as well as the Court." The record does not contain a copy of the exhibits admitted at the hearing. The GAL testified that, after he was reappointed, he investigated the allegations in Sergio's petition for order of protection and then testified at the hearing on it. The GAL thereafter acted as an intermediary between the parties due to the orders of protection that prohibited contact between the parties, which required him to review and respond to countless emails and "caused a significant amount of time and effort on [his] part acting as an in between for all kinds of issues,

including medical cards, insurance issues, school registration, et cetera." Additionally, the GAL testified he conducted an investigation (presumably) into the parties' postjudgment petitions, during which he met with Emily, Sergio, A.P., and M.P.

¶ 31    According to the GAL, the fees listed on his invoices were actually incurred, and they were reasonable and necessary given the scope of his appointment and the parties' postjudgment litigation. Further, the accounting he had provided accurately reflected the payments he received and how those were applied to each party's account. It also showed Sergio was not charged any fees after he obtained his fee waiver. The GAL testified he had been providing services as a GAL for six years, had been appointed in multiple cases, and that his hourly rate was reasonable and consistent with that of other GALs in the area.

¶ 32    Further, the GAL testified that, when Emily paid a portion of the prejudgment fees that had been allocated to Sergio, he assumed (and maybe Emily told him) that she was making the payment on Sergio's behalf out of the proceeds from the sale of the second residence. In any event, the GAL explained the accounting showed those payments had been applied to the prejudgment fees for which Sergio was responsible.

¶ 33    Sergio testified he was unable to correlate the exhibits with the allegations in the GAL's petition that the GAL had received a $13,000 payment that was applied toward the prejudgment fees and had incurred $1275 in yet-to-be-invoiced fees. Further, Sergio disagreed with the GAL's allegation that the fees were reasonable and necessary and noted he had expressed his concerns in his petition to substitute the GAL. Finally, Sergio disagreed with the GAL's allegation that he was able to pay the fees and asserted he did not owe any outstanding fees to the GAL. Sergio did not dispute he had received the invoices and, when asked by the GAL whether he had ever disputed the items on the invoices, Sergio responded, "I'm not disputing the fees."

¶ 34    The court granted the GAL's final fee petition, ordering Sergio to pay $7387.10. The court meticulously set forth its findings. The court found the GAL had performed the duties required of his first appointment and noted that, as the case moved toward trial, the GAL was required to expend more time on the case. Thus, the GAL's fees increased. The court also recalled the parties had stipulated that the GAL's fees that were outstanding at the time of trial, totaling $17,773.10, were fair and reasonable and that those fees had been allocated entirely to Sergio, to be paid with the proceeds from the sale of the parties' second residence.

¶ 35    With respect to the postjudgment fees, the court found the GAL's services were necessary to move the case forward and that, as a result, the GAL incurred additional fees. The court found the invoices the GAL had issued to the parties were detailed, "both in terms of what was done and the amount of time that was spent." It also found the accounting showed the postjudgment fees were allocated equally between the parties until Sergio obtained a fee waiver, at which time Sergio owed the GAL $7387.10. After Sergio obtained a fee waiver, the court found, the GAL stopped billing Sergio for the services he performed.

¶ 36    Further, the court found the case was complex from the outset and became even more complex after judgment was entered, because of Sergio's petition for an order of protection and Emily's postjudgment filings. The court concluded the GAL's participation was both reasonable and essential and that the parties and the children had benefited from his involvement.

¶ 37    The court also addressed Sergio's complaint with respect to the payment of $17,773.10 from the proceeds from the sale of the parties' second residence. It found Sergio's concern was not relevant to the question at hand but nevertheless explained the evidence before it showed the entirety of those proceeds had been applied to Sergio's balance as contemplated by the dissolution judgment.

¶ 38 This appeal followed.

¶ 39 II. ANALYSIS

¶ 40 On appeal, Sergio contends the circuit court erred by (1) denying his petition to substitute the GAL and (2) granting the GAL's final fee petition.

¶ 41 A. Lack of Appellee's Brief

¶ 42 Initially, we note that, because the GAL has not filed a brief, our review is guided by the principles of *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976). The appellant is not entitled to a *pro forma* reversal when the appellee does not file a brief, the reason being that "[a] considered judgment of the trial court should not be set aside without some consideration of the merits of the appeal." *Id.* at 131. Rather, we have three distinct, discretionary options: we may (1) serve as an advocate for the appellee and decide the case if we determine justice so requires, (2) decide the merits of the case if the record is simple and the issues can be easily decided without the aid of the appellee's brief, or (3) reverse the trial court when the appellant's brief demonstrates *prima facie* reversible error that is supported by the record. *Id.* at 133.

¶ 43 We conclude the record is simple and the issues presented can easily be decided without the aid of an appellee's brief. Admittedly, the record here is relatively voluminous and contains some factual voids caused by Sergio's failure to supply a complete record to this court. But volume alone does not render the record complex. And the omissions from the record do not make meaningful review impossible, especially given that the trial court's extensive (and helpful) recitation of its findings makes clear the bases for its decisions. Further, the issues presented by Sergio—whether the trial court erred by denying his petition to substitute the GAL and granting the GAL's fee petition—are neither novel nor complex and merely require a straightforward

application of established law. Accordingly, we choose to address the merits of Sergio's appeal despite the lack of an appellee's brief.

¶ 44                                    B. Sergio's Motion to Substitute the GAL

¶ 45    Sergio contends the circuit court erred by denying his motion to substitute the GAL. We disagree.

¶ 46    Section 506(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides the trial court, on its own or any party's motion, may appoint a GAL, who shall investigate the facts of the case, interview the children and the parties, and prepare a written report or testify regarding his or her recommendations in accordance with the best interests of the children. 750 ILCS 5/506(a) (West 2020). When deciding whether to appoint a GAL, the court should consider, among other things, "the nature and adequacy of the evidence to be presented by the parties and the availability of other methods of obtaining information, including social service organizations and evaluations by mental health professions, as well as resources for payment." 750 ILCS 5/506(a-5) (West 2020). The decision to appoint a GAL is left to the court's discretion. *In re Marriage of Ricketts*, 329 Ill. App. 3d 173, 182 (2002). An abuse of discretion occurs when the trial court's decision is unreasonable. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009).

¶ 47    Section 506(a) is silent as to whether a party has the right to seek substitution of the GAL. Assuming, however, a party may seek substitution of a GAL, we find the trial court did not abuse its discretion in denying Sergio's motion.

¶ 48    At the time Sergio sought substitution of the GAL, the GAL had been involved in the parties' contentious litigation for more than 18 months. He had expended considerable time and resources investigating the parties' allegations and even offering testimony on Sergio's petition, thereby making him keenly aware of the concerns of the parties and their children. Moreover, this

was a complex case that became even more complex after judgment, due to the orders of protection that had been entered. Given the complexity and contentious nature of the case, to substitute the GAL would have caused further undue delay, as any new GAL would have been required to start anew, investigating and learning the complexities of the family circumstances. Under these circumstances, we cannot say the trial court's decision to deny Sergio's motion to substitute the GAL was unreasonable. See *Blum*, 235 Ill. 2d at 36.

¶ 49 Defendant nevertheless argues substitution was appropriate "in light of all the defects in the [GAL's] performance," asserting the GAL did not provide to him certain information and failed to facilitate the reunification of A.P. and Sergio and M.P. and Emily. He also argues substitution was appropriate given the financial circumstances of the parties. He cites no authority in support of his contentions and offers nothing more than unreasoned and undeveloped contentions. His contentions are, therefore, forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010).

¶ 50 In any event, the record belies defendant's argument that the GAL had made no effort to facilitate reunification therapy between A.P. and Sergio as required by the agreed parenting judgment. Indeed, the record shows that A.P. had met with the reunification therapist but her relationship with the therapist broke down when the therapist communicated statements to her that were made by Sergio. And the record does not show the GAL was ever ordered to facilitate reunification between M.P. and Emily. Further, the trial court was aware of the financial circumstances of the parties and waived Sergio's share of the GAL's fees as soon as he asked for a fee waiver. Accordingly, we conclude the trial court did not abuse its discretion in denying Sergio's motion to substitute the GAL.

¶ 51                                C. The GAL's Fees

¶ 52   Sergio also contends the trial court erred by granting the GAL's final fee petition. We disagree.

¶ 53   GAL fees must be reasonable and necessary. 750 ILCS 5/506(b) (West 2020); *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 973, 983 (1987). The person seeking fees must demonstrate their reasonableness, and the fee petition must, at a minimum, "specify the services performed, by whom they were performed, the time expended thereon[,] and the hourly rate charged therefor." *Id.* at 984.

> "Once presented with these facts, the trial court should consider a variety of additional factors such as the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client [citation], and whether there is a reasonable connection between the fees and the amount involved in the litigation." *Id.*

A fee award will not be reversed absent an abuse of discretion. *Id.*

¶ 54   Sergio assails the trial court's decision on several bases. However, with the exception of a citation to *Kaiser*, in which he sets forth boilerplate law concerning fee awards, he has failed to cite any authority in support of his arguments and, in many places, he offers nothing more than mere contentions, unsupported by reasoned argument. Thus, Sergio has forfeited his contention that the trial court erred by granting the fee petition. See *Vancura*, 238 Ill. 2d at 370.

¶ 55   Forfeiture aside, we find the trial court did not abuse its discretion by granting the GAL's fee petition. Here, the GAL expressly incorporated into his second fee petition the invoices that he had attached to his December 4, 2020, quarterly statement. Those invoices specified what services were performed, by whom they were performed, the time expended thereon, and the hourly rate

charged therefor until Sergio obtained his fee waiver. The GAL testified in support of his petition, stating that he actually earned the fees listed on the invoices. He opined the fees were reasonable and necessary given the intensive nature of his appointment, which, after his "reappointment," required him to (1) investigate the allegations contained in Sergio's petition for order of protection; (2) testify at the hearing on Sergio's petition; (3) meet with the parties and the minors in regard to the parties' other postjudgment petitions; and (4) because of the orders of protection that had been entered, act as an intermediary between the parties. Further, the GAL stated he had been a GAL for six years, had been appointed in multiple cases, and his hourly rate was reasonable and consistent with that of other GALs in the area. For his part, Sergio raised concerns with the application of payments that had been made by Emily to the prejudgment fees that had been allocated to him. However, when asked directly, Sergio stated he was "not disputing the fees." Indeed, at no time, either in this court or in the trial court, has Sergio specified what items on the GAL's invoices were unreasonable and unnecessary.

¶ 56    The record shows the trial court carefully considered the allegations of the GAL's petition, the evidence presented at the hearing, and Sergio's position, and determined the fees were reasonable and necessary. The court found the invoices submitted were sufficiently detailed and that the accounting prepared by the GAL showed the postjudgment fees had been allocated equally to the parties until Sergio obtained a fee waiver, at which time the GAL ceased billing Sergio. Because Sergio has failed to include that accounting in the record on appeal, we must presume it supported the court's findings. See *Midwest Builder Distributing, Inc. v. Lord and Essex, Inc.*, 383 Ill. App. 3d 645, 655 (2007) (The appellant has the burden to provide a sufficient record to review claims of error. "When there is a gap in the record that could have a material impact on the outcome of the case, the reviewing court will presume that the missing evidence supported the judgment of

the trial court and resolve any doubts against the appellant.").[2] Further, the record shows the trial court considered the financial standing of the parties and, as soon as Sergio obtained a fee waiver, the court ordered the GAL to cease billing Sergio for his share of the fees. (The GAL did not bill Sergio for any fees incurred after the fee waiver.) The court also considered the nature of the case and the difficulty and novelty of the issues involved, explaining the case was complex from its outset and increased in complexity after judgment was entered as a result of the orders of protection and the allegations of the postjudgment petitions, and found the parties had benefitted from the GAL's involvement. Based on our review of the record, we cannot say the trial court's decision to grant the petition was unreasonable. See *Blum*, 235 Ill. 2d at 36.

¶ 57    We note Sergio also takes issue with the prejudgment GAL fees that were allocated entirely to him in the dissolution judgment, contending those fees were not reasonable or necessary. His contention is not well taken. Before trial, the parties stipulated the GAL's prejudgment fees were fair and reasonable. The trial court allocated those fees in the dissolution judgment, and Sergio appealed from that judgment but later voluntarily dismissed his appeal. Not only does Sergio's trial stipulation likely preclude his contention (*Dawdy v. Sample*, 178 Ill. App. 3d 118, 127 (1989)), but, in essence, Sergio is collaterally attacking a portion of the dissolution judgment that could have been raised in his prior appeal. We do not have jurisdiction to consider such a claim. See *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 755-56 (2006).

¶ 58                    D. Sergio's Noncompliance with Rules 341 and 342

---

[2] Sergio has appended the GAL's accounting to his brief, but, because the accounting is not part of the record, we cannot consider it. *Kensington's Wine Auctioneers and Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 14 (2009).

¶ 59    Before closing, we must call attention to Sergio's near total failure to comply with the supreme court rules governing the form and content of appellate briefs. See Ill. S. Ct. R. 341 (eff. Oct. 1, 2020); R. 342 (eff. Oct. 1, 2019). Compliance with Rules 341 and 342 is mandatory, and a party's unrepresented status does not excuse his or her failure to comply with the rules. *Fryzel v. Miller*, 2014 IL App (1st) 120597, ¶¶ 25-26.

¶ 60    Sergio's brief does not contain a *single* reference to the record on appeal, does not fairly and accurately summarize the facts relevant to his contentions, and does not contain a proper argument, supported by citation to relevant authority and the record. See Ill. S. Ct. R. 341(h)(6), (7) (eff. Oct. 1, 2020). Indeed, Sergio's "statement of facts" is five sentences long, is almost entirely argument, and does not summarize any of the relevant pleadings, the relevant in-court proceedings, or the trial court's findings. And, as noted, Sergio has failed to develop much of his "argument" beyond mere contentions, and he has cited only one precedential authority and has made no effort to explain why that authority supports his position. See *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 56 (citing *Vancura*, 238 Ill. 2d at 370) (citation to inapposite authorities, without meaningful, reasoned argument does not satisfy dictates of Rule 341(h)(7)). Moreover, the record does not support, but rather belies, many of, if not all, his contentions. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Additionally, Sergio did not paginate his appendix or include a table of contents to the record on appeal. See Ill. S. Ct. R. 342 (eff. Oct. 1, 2019).

¶ 61    In light of Sergio's near total noncompliance with Rules 341 and 342, we would have been well within our discretion to strike Sergio's brief and dismiss his appeal. See *Fryzel*, 2014 IL App (1st) 120597, ¶ 25. We have chosen not to impose such a harsh sanction for the same reasons we decided, under *Talandis*, to review the merits.  However, Sergio's flagrant disregard of the rules

has, as noted, resulted in forfeiture of his contentions and, therefore, precluded him from demonstrating *prima facie* error such that reversal would be appropriate under *Talandis*. See *Coleman v. Windy City Balloon Port, Ltd.*, 160 Ill. App. 3d 408, 417-20 (1987).

¶ 62                                   III. CONCLUSION

¶ 63    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 64    Affirmed.